IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
|  | ) |
|  | )   CIVIL ACTION NO.  06-1624 (PG) |
|  | ) |
| PUERTO RICO AQUEDUCT AND SEWER AUTHORITY | ) ) ) |
| and | ) ) |
| THE COMMONWEALTH OF PUERTO RICO, | ) ) ) |
| Defendants. | ) ) |

CONSENT DECREE

## TABLE OF CONTENTS

BACKGROUND ................................................................................................. 1

OBJECTIVES ................................................................................................... 3

I.     JURISDICTION AND VENUE ................................................................ 3

II.    PARTIES ................................................................................................ 4

III.   APPLICATION AND BINDING EFFECT ............................................. 4

IV.   DEFINITIONS ....................................................................................... 6

V.    REMEDIAL MEASURES AT WASTEWATER TREATMENT PLANTS ................. 10

VI.   INTERIM EFFLUENT LIMITS ........................................................... 13

VII.  INTEGRATED PREVENTIVE MAINTENANCE PROGRAM FOR WASTEWATER
TREATMENT PLANTS ....................................................................... 14

VIII. SPILL RESPONSE AND CLEANUP PLAN ........................................ 16

IX.   SANITARY SEWER SYSTEM EVALUATION AND REPAIRS ................ 18

X.    WASTE WATER TREATMENT CAPACITY MANAGEMENT ................ 21

XI.   REVIEW AND APPROVAL PROCEDURES ....................................... 24

XII.  CIVIL PENALTY ................................................................................ 26

XIII. STIPULATED PENALTIES ................................................................ 27

XIV. REMOVAL OF FACILITIES FROM DESIGNATED STIPULATED PENALTY
PROVISIONS ...................................................................................... 37

XV.  REINCORPORATION OF FACILITIES INTO DESIGNATED STIPULATED
PENALTY PROVISIONS ..................................................................... 39

XVI. QUARTERLY PROGRESS REPORTS ............................................... 40

XVII. QUARTERLY PROGRESS MEETINGS ............................................. 43

XVIII. FORCE MAJEURE ............................................................................. 43

XIX.  NOTICES ............................................................................................ 46

i

XX.      ACCESS TO THE FACILITIES ................................................... 48

XXI.     RECORD RETENTION ........................................................... 49

XXII.    DISPUTE RESOLUTION ......................................................... 50

XXIII.   SUPPLEMENTAL ENVIRONMENTAL PROJECT .................................... 51

XXIV.    COMPLIANCE WITH APPLICABLE LAWS ....................................... 59

XXV.     EFFECT OF SETTLEMENT ...................................................... 60

XXVI.    RESERVATION OF RIGHTS ..................................................... 61

XXVII.   COSTS OF SUIT ................................................................ 63

XXVIII.  PUBLIC COMMENT ............................................................. 63

XXIX.    MODIFICATION ................................................................. 63

XXX.     RETENTION OF JURISDICTION ................................................. 64

XXXI.    EFFECTIVENESS AND TERMINATION ........................................... 64

ii

## LIST OF APPENDICES

Appendix A - List of Facilities Covered by Consent Decree (as of date of lodging)

Appendix B - Short-Term Remedial Measures

Appendix C - Mid-Term Remedial Measures

Appendix D - Capital Improvement Plan

Appendix E - Interim Effluent Limits

Appendix F - Minimum Requirements for Development of the Integrated Preventative
Maintenance Program

Appendix G - Minimum Requirements for Development of the Spill Response and Cleanup Plan

Appendix H - Minimum Requirements for Sanitary Sewer System Evaluation Plan

Appendix I - PRASA's Sewer Connections Policy and Mechanisms (December 29, 2005)

Appendix J - List of Prior Administrative Enforcement Actions

Appendix K - Monthly Average Permitted Flow

## BACKGROUND

WHEREAS, Plaintiff, the United States of America, at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), is filing a Complaint (the "Complaint") concurrently with lodging of this Consent Decree, alleging that Defendant Puerto Rico Aqueduct and Sewer Authority ("PRASA") violated Sections 301 and 402 of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311 and 1342, and regulations promulgated thereunder, and PRASA's National Pollutant Discharge Elimination System ("NPDES") permits issued pursuant thereto, with regard to PRASA's Wastewater Treatment Plants ("WWTPs");

WHEREAS, PRASA is a public corporation created by legislative enactment and existing under the Laws of Puerto Rico, Annotated Title 22, § 141, *et seq.*, as amended, to administer the aqueduct and sewer system of Puerto Rico;

WHEREAS, the United States, on behalf of EPA, and PRASA previously have entered into judicial consent decrees intended to address alleged Clean Water Act violatoins at various PRASA WWTPs and public water supplies;

WHEREAS, PRASA owns and operates the WWTPs addressed in the Complaint and in this Consent Decree;

WHEREAS, EPA alleges that PRASA has, during the relevant time period, discharged pollutants in excess of the effluent limitations contained in PRASA's NPDES Permits for its WWTPs in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a); failed to meet operation and maintenance provisions of the applicable NPDES Permits for its WWTPs, as required by 40 CFR § 122.41(e) and in violation of Section 301(a) of the CWA, 33 U.S.C. §1311(a); and discharged raw sewage, including but not limited to fecal coliform, oil and grease, metals and other "pollutants" within the meaning of Section 502(6) of the CWA, 33 U.S.C. §

1362(6), from the seven Collection Systems listed in the Complaint and locations other than those authorized by the applicable NPDES Permit for certain WWTPs, in violation of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342. EPA further alleges that the Complaint states claims upon which relief may be granted against PRASA under Sections 301(a), 309, and 402 of the CWA, 33 U.S.C. §§ 1311, 1319, and 1342;

WHEREAS, PRASA maintains that it has recently taken actions toward achieving compliance with the CWA and with its NPDES Permits at its WWTPs;

WHEREAS, the express purpose of the Parties entering into this Consent Decree is to resolve the claims alleged in the Complaint, and requirements contained in certain unresolved Prior Administrative Enforcement Actions and a Prior Consent Decree related to the allegations set forth in the Complaint, with the goal of implementing a system-wide NPDES Permit compliance plan, and a WWTP operation and maintenance and capital improvement plan to achieve compliance with the Clean Water Act; and

WHEREAS, Plaintiff, the United States of America and the Defendant PRASA, without making any admission of fact or law, or evidence of same, or of any violation of any permit, law or regulation, agree that: (i) settlement of these unresolved matters in accordance with this Consent Decree is in the best interests of the United States, PRASA and of the public; and (ii) entry of this Consent Decree without further litigation is the most expeditious, economic and appropriate means of resolving this action and the remaining obligations in certain Prior Administrative Enforcement Actions and the Prior Consent Decree;

- 2 -

NOW THEREFORE, without admission by PRASA of the non-jurisdictional allegations in the Complaint and upon consent of the United States and PRASA, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## OBJECTIVES

It is the express purpose of the Parties in entering into this Consent Decree to further the objectives of the Clean Water Act, as enunciated at Section 101, 33 U.S.C. § 1251, to eliminate unauthorized discharges, to address NPDES Permit effluent limitation exceedences from and operation and maintenance of the Facilities, and to supercede certain Prior Administrative Enforcement Actions and the Prior Consent Decree to the extent and in the manner set forth in this Consent Decree. All plans, reports, construction, remedial maintenance, and other obligations in this Consent Decree or resulting from the activities required by this Consent Decree shall have the objective of causing PRASA to come into and remain in full compliance with the Clean Water Act, and with the terms and conditions of its NPDES permits.

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction of the subject matter and over the parties to this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and Section 309 of the CWA, 33 U.S.C. § 1319. PRASA consents to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) and § 1395(a).

## II. PARTIES

2.     The Parties to this Consent Decree are as follows:

a.     The United States, being the Plaintiff United States of America, on behalf of the United States Environmental Protection Agency; and

b.     PRASA, being Defendant Puerto Rico Aqueduct and Sewer Authority, a public corporation created by legislative enactment and existing under the Laws of Puerto Rico, Annotated Title 22, § 141, *et seq.*, as amended, to administer the aqueduct and sewer system of Puerto Rico.

## III. APPLICATION AND BINDING EFFECT

3.     The provisions of this Consent Decree shall apply to, inure to the benefit of, and be binding upon the United States, on behalf of EPA; Defendant PRASA, its officers, directors, employees, successors in interest and assigns, and upon all persons, agents, firms, subsidiaries, divisions, and corporations acting under or for them, including any entity which may enter into a contract with PRASA to operate any facility governed by this Consent Decree, and such contractor's officers, agents, directors, employees, parent and related companies, subsidiaries, successors in interest and assigns. The Appendices to this Consent Decree are incorporated herein and shall have the same force and effect as all provisions hereto.  The undersigned representatives of the United States and PRASA certify that they are fully authorized to enter into this Consent Decree and to execute and to bind legally each signatory to this Consent Decree.

4.     Effective from the date of lodging of this Consent Decree until its termination, PRASA shall give written notice of this Consent Decree to any person or entity to whom

PRASA may transfer ownership or operation of the Facilities affected by the terms and requirements of this Consent Decree, and shall provide a copy of this Consent Decree to any such person or entity.  PRASA shall notify EPA and the United States Department of Justice in writing of any successor in interest at least twenty-one (21) days prior to any such transfer.

5.      PRASA shall make a copy of this Consent Decree available to each engineering, consulting and contracting firm to be retained to perform the work or any portion thereof required by this Consent Decree upon execution of any contract relating to such work, and shall inform each such engineering firm, consultant or contractor of the terms of this Consent Decree, and shall also so inform each engineering, consulting and contracting firm already retained no later than thirty (30) days after the date of lodging of this Consent Decree.  Any action taken by any engineering firm, contractor or consultant to implement PRASA's duties under this Consent Decree shall be considered an action of  PRASA for purposes of determining compliance with this Consent Decree.

6.      In any action to enforce this Consent Decree, PRASA shall not raise as a defense the failure by any of its agents, contractors, subcontractors, employees, successors or assigns to take actions necessary to comply with this Consent Decree, except as provided under Section XVIII (Force Majeure) of this Consent Decree.  This Section shall not limit PRASA's right to take all appropriate action against any person or entity that causes or contributes to PRASA's failure to perform.

## IV. DEFINITIONS

7.     Unless otherwise defined herein, the terms used in this Consent Decree will have the meaning given to those terms in the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and the regulations promulgated thereunder. The following terms, as used in this Consent Decree and for purposes of this Consent Decree only, will be defined as follows:

a.     The term "Complaint" shall mean the Complaint filed by the United States in this action captioned *United States v. Puerto Rico Aqueduct and Sewer Authority, et al.,* Civ. No. _____.

b.     The term "Consent Decree" shall mean this Consent Decree, including all Appendices hereto, and any modifications made hereto.

c.     The term "date of lodging" shall mean the date on which this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the District of Puerto Rico.

d.     The term "date of entry" shall mean the date on which this Consent Decree is approved and signed by the Judge for the United States District Court for the District of Puerto Rico.

e.     Unless otherwise indicated, the term "day" or "days" as used herein shall mean a calendar day or days. References to "working days" shall mean days of the week other than Saturdays, Sundays, holidays, and days containing half-holidays. In computing any period of time under this Consent Decree, if the last day would fall on a Saturday, Sunday or federal or Commonwealth holiday, the period shall continue until the next day other than a Saturday, Sunday, or holiday.

- 6 -

f.      "Deliverable" shall mean any written plan, report, map, or other document required to be submitted by PRASA pursuant to Section V (Remedial Actions at Wastewater Treatment Plants), as further identified in Appendices B - D, including all documents to be further developed pursuant thereto, Section VII (Integrated Preventive Maintenance Program for Wastewater Treatment Plants), as further identified in Appendix F, Section VIII (Spill Response and Cleanup Plan), as further identified in Appendix G, Section IX (Sanitary Sewer System Evaluation and Repairs), as further identified in Appendix H, and the Quarterly Progress Reports required to be submitted by PRASA pursuant to Section XVI (Quarterly Progress Reports).

g.      Unless otherwise indicated, "Facility or "Facilities" shall refer collectively to all Plants and Collection Systems as defined herein and covered by this Consent Decree.

h.      Unless otherwise indicated, the term "NPDES Permit" or "Permit" as used herein shall mean the National Pollutant Discharge Elimination System Permit issued to PRASA for each of its WWTPs and related facilities, and shall include renewals, modifications and revisions thereof.

i.      The term "Plant" or "WWTP" shall mean that portion of a Publicly Owned Treatment Works which is designed to provide treatment (including recycling and reclamation) of municipal sewage and industrial waste, and shall include all of its outfalls and those portions of the collection and transmission system up to the last manhole of the pump stations nearest to the plant.

j.      Unless otherwise indicated, the term "Prior Consent Decree" shall mean the consent decree between the United States and PRASA entered on February 27, 1978, and as amended from time to time thereafter by Order of the Court (also known as "PRASA 1").

- 7 -

k.    "Prior Administrative Enforcement Actions" means those administrative orders issued by EPA to PRASA listed in Appendix J.

l.    "Pump Station" shall mean the integrated entity composed of the last manhole in the gravity sewer line segment that feeds the wet well, the sewer pipe portion in that section, the entrance channel(s), the wet well, bar screen rack and/or comminutor, back flow proventer, the dry well, the pump housings, level indicators, float switches and controllers, sump pumps, ejectors, pots and air compressors, electrodes, pressure sensing controllers, plug valves, check valves, air exhaust/ventilation system, the electrical motor control center ("MCC") and/or control panels, transfer switch, alternate power unit ("APU") and its fuel tank, and the discharge line which extends towards the facility property limits.

m.    "Quarterly Progress Report" shall mean the quarterly progress reports to be submitted by PRASA pursuant to Section XVI of this Consent Decree.

n.    The term "Responsible Official" shall mean the principal executive officer of PRASA or a duly authorized representative, as set forth in 40 C.F.R. § 122.22.

o.    "Separate Sanitary Sewer Collection System," hereafter referred to as "Collection System," shall mean the collection and transmission system (including all pipes, force mains, sanitary sewer lines, overflow structures, manholes, pump stations, and appurtenances thereto) owned by PRASA and designed to convey only sewage, and not storm water, from residences, commercial buildings, industrial plants and institutions for treatment at PRASA's wastewater treatment plants, including portions of the system added after the date of entry of the Consent Decree. The requirements pursuant to Sections V - IX required to be

undertaken at Collection Systems under this Consent Decree shall not apply to Pump Stations, as defined above.

   p. "Sanitary Sewer Overflow" or "SSO" shall mean an overflow, spill, diversion, or release or discharge of wastewater from or caused by conditions in PRASA's Plants and Collection Systems, as defined herein. This term shall include discharges to waters of the United States from PRASA Plants and Collection Systems, as well as any release of wastewater from PRASA's Sanitary Sewer System to public or private property that does not reach waters of the United States to the extent the United States has jurisdiction under the law in effect at the time over such releases. This definition shall include "unanticipated bypass" or "unanticipated bypass event," as those terms are used in, *inter alia*, PRASA's NPDES Permits. Stipulated penalties under Paragraph 42 of this Consent Decree shall not be assessed at pump stations, as defined below.

   q. The term "submit," in regard to documents required to be submitted pursuant to this Consent Decree, shall mean the date the document is placed in the express mail, certified mail, and/or express courier service, unless otherwise specifically stated.

   r. "Substantial Completion" shall mean, when used in reference to construction projects required under this Consent Decree, the date, as certified by the Engineer in charge of a construction project, when the construction project or specified part thereof is sufficiently completed, in accordance with the design specifications, such that the project or specified part thereof can be used to accomplish the purposes for which it was intended.

   s. "United States" shall mean the United States of America, acting on behalf of EPA.

t.    "WWTP" shall mean a PRASA wastewater treatment plant and shall have
the same meaning as "Plant," as defined herein.

## V. REMEDIAL MEASURES AT WASTEWATER TREATMENT PLANTS

8.    PRASA shall implement system-wide remedial measures at all WWTPs owned
and/or operated by PRASA in the Commonwealth in accordance with Appendix B, Appendix C
and Appendix D. The United States and PRASA agree that these system-wide remedial
measures will be completed in three phases, consisting of short term remedial actions (set forth
in Appendix B), and mid term remedial actions (set forth in Appendix C), and long term capital
improvements (set forth in Appendix D).   For any remedial measure required under this
Consent Decree, PRASA shall timely apply for any necessary Permit modifications in
accordance with 40 C.F.R. Section 122.62. These remedial actions and capital improvements are
in addition to the other injunctive obligations set forth in this Consent Decree, including but not
limited to the development and implementation of a system-wide Integrated Preventive
Maintenance Program, Spill Response and Cleanup Plan, Sanitary Sewer System Evaluation
Plans, and Sanitary Sewer System Repair Plan.

a.    Short Term and Mid Term Remedial Actions: PRASA agrees to undertake
and Substantially Complete each of the short term and mid term remedial measures by the dates
specified in Appendix B and Appendix C.

b.    Long Term Capital Improvements - First Term:

i.    Within two years of entry of this Consent Decree, but no later than
June 1, 2008, PRASA shall Substantially Complete three (3) of

- 10 -

the capital improvement projects (CIPs) listed in Appendix D, Table 1.

    ii.    Within four (4) years of entry of this Consent Decree, but no later than June 1, 2010, PRASA shall Substantially Complete four (4) additional CIPs listed in Appendix D, Table 1 for a total of seven (7) of the CIPs listed in Appendix D, Table 1.

    iii.    Within five (5) years of entry of this Consent Decree, but no later than June 1, 2011, PRASA shall Substantially Complete thirteen (13) additional CIPs listed in Appendix D, Table 1 for a total of twenty (20) of the CIPs listed in Appendix D, Table 1.

    c.    <u>Long Term Capital Improvement Plans - Second Term</u>: Within ten (10) years of entry of this Consent Decree, but no later than June 1, 2016, PRASA shall Substantially Complete the CIPs listed in Appendix D, Table 2, as necessary, to achieve compliance with the terms and conditions of the NPDES permit for each Facility.

    d.    <u>Long Term Capital Improvement Plans - Third Term</u>:  Within fifteen (15) years of entry of this Consent Decree, but no later than June 1, 2021, PRASA shall Substantially Complete the CIPs listed in Appendix D, Table 3, as necessary, to achieve compliance with the terms and conditions of the NPDES permit for each Facility.

9.      PRASA may request in writing that EPA grant an extension of any deadline established in Paragraph 8, which EPA may grant in writing if it determines that good faith efforts to comply with timetables in Paragraph 8, Appendix B, Appendix C and/or Appendix D have been made and good cause for the requested extension exists.  PRASA may substitute other Plants of equivalent or greater capacity for those projects selected in accordance with Paragraph 8, subject to EPA approval.  PRASA may substitute different control technology or equipment units or processes for the projects listed in Appendices B through D with notice to EPA provided that such control technology or equipment units or processes achieves the same or better results. However, the effectiveness of any control technology is not warranted or endorsed in any way by EPA.  The granting of such an extension and/or substitution granted pursuant to this Paragraph shall be within EPA's sole discretion and shall not necessarily be deemed a "material modification" within the meaning of Section XXIX (Modification) of this Consent Decree. However, any modification to the schedule that allows any remedial measures to be completed beyond fifteen (15) years after the entry of this Consent Decree shall be considered a major modification of the Consent Decree.

10.      For any anticipated bypasses at any Facility undergoing implementation of short or mid term remedial actions or long term capital improvements pursuant to Section V, PRASA shall provide notice of such anticipated bypass in the manner set forth in 40 C.F.R. §122.41(m). If EPA determines that the criteria for approving such anticipated bypass is met, it shall so indicate in writing, and no stipulated penalties shall accrue for the period of time approved by EPA.

## VI.    INTERIM EFFLUENT LIMITS

11.    Commencing from the date of entry of this Consent Decree, but no later than June 1, 2006, and continuing until the established deadlines for each Plant listed in Appendix E, PRASA shall comply with the respective interim limitations set forth for each of the WWTPs in Appendix E.   For each pollutant for which an interim limit is established in Appendix E, PRASA shall monitor for compliance with the same measurement frequency and sample type as specified for that pollutant in the respective NPDES Permit for each Facility, and shall submit the results of each sample on the monthly Discharge Monitoring Reports ("DMRs") submitted for each WWTP in accordance with its respective NPDES Permit.  During the period that the interim effluent limitations are in effect, PRASA shall comply at all times with all other conditions and limitations set forth in each Facility's NPDES Permit.

Once the time frame for interim limits set forth in Appendix E expires, PRASA must comply with all terms, conditions and limitations set forth in each WWTP's individual NPDES permit.  However, PRASA may request from EPA an extension of its interim limits if it still can not comply with the effluent limitations set forth in its NPDES permit provided that PRASA has:

(i) complied with all remedial measures;

(ii) implemented the IPMP and continues to implement its 1985 Industrial Preteatment Program, as amended;

(iii) submitted necessary information to Puerto Rico's Environmental Quality Board for the Water Quality Certificate for the affected WWTP; and

- 13 -

(iv) applied to EPA for modifications to its NPDES permit.

The request must specify what steps have been taken by PRASA to comply with its permit and/or to receive a modification to its Water Quality Certificate, and an explanation of the amount of time needed for the extension of the interim limits. EPA's determination regarding whether or not the interim limits are extended shall not be subject to the provisions of Section XXII (Dispute Resolution), but is still eligible to be considered for force majeure under Section XVIII.

## VII.   INTEGRATED PREVENTIVE MAINTENANCE PROGRAM FOR WASTEWATER TREATMENT PLANTS

12.    All Plants in Puerto Rico owned and/or operated or which may be owned and/or operated under this Consent Decree by PRASA shall be operated and maintained in accordance with an EPA-approved Integrated Preventive Maintenance Program ("IPMP"). PRASA shall develop and implement an IPMP meeting the minimum requirements set forth in Appendix F of this Consent Decree in accordance with the following schedule and in accordance with the schedule in the IPMP, as approved by EPA:

| Work to be Performed | Due Date |
|---|---|
| Draft IPMP and implementation schedule for submittal to EPA for review and comment | October 31, 2007 |
| Revised IPMP submitted to EPA for approval, disapproval, or modification and approval | Within 90 days of receiving EPA's comments |
| IPMP fully implemented | In accordance with approved IPMP, but in no event later than January 31, 2009 |

- 14 -

13.     If EPA and/or PRASA believes that new information or data supports modification of the IPMP set forth in Paragraph 12, PRASA may submit to EPA for review and approval a request for modification of the IPMP. Any modifications to the IPMP made pursuant to this Paragraph shall not be deemed "material modifications" within the meaning of Section XXIX (Modification) of this Consent Decree.

14.     The Parties recognize the importance of operating and maintaining the Plants, as well as maintaining the completed remedial actions required under Section V prior to the full implementation of the IPMP. Within eighteen (18) months of the date of entry of this Consent Decree, but no later than December 1, 2007, PRASA shall implement an interim preventative maintenance program at the following Plants:

Aibonito
Bayamon
Boquerón
Camuy
Carolina
Cayey
Isabela
Jayuya
La Parguera
Maunabo
Morovis
Patillas
Ponce
Puerto Nuevo
Sabana Grande
San Lorenzo
Santa Isabel
Toa Alta Heights
Utuado
Vega Baja
Yauco

The interim preventive maintenance program, at a minimum, shall include regular inspections and procedures to support prompt repair of all equipment and routine preventive maintenance for new equipment. PRASA may, at its election, engage a contractor to perform any interim preventive maintenance program. If PRASA fails to implement the interim preventive maintenance program at any Plant, EPA can withhold an additional 10% of the money being accrued in the escrow account, as described in Paragraph 42, for effluent limit violations. Although the interim preventative maintenance program applies to the twenty one (21) Plants referenced above, PRASA is obligated under the CWA and its permits to operate and maintain all of its Plants properly at all times.

15.     Stipulated penalties shall be assessed for the failure to implement any key component (as defined in Paragraph 42) of the IPMP, and may also be assessed for failure to implement other components of the IPMP if EPA, in its discretion, determines that such failure is hindering PRASA's compliance with this Consent Decree and/or the terms and conditions of each individual Facility's NPDES permits. Such penalties for failure to implement IPMP components shall be assessed in accordance with the provisions of Section XIII (Stipulated Penalties). Nothing herein shall prohibit the simultaneous accrual of stipulated penalties for separate violations of the IPMP provisions.

## VIII. SPILL RESPONSE AND CLEANUP PLAN

16.     Within 120 days of entry, but no later than October 1, 2006, PRASA shall draft and submit to EPA for approval a Spill Response and Cleanup Plan ("SRCP") that specifies actions to be taken by PRASA for SSOs from all Facilities owned and/or operated by PRASA. For purposes of this provision, "Facilities" shall include all Collection Systems owned and/or

operated by PRASA, irrespective of whether such Facilities are not otherwise covered by this Consent Decree. The minimum elements to be included in the SRCP are set forth in Appendix G to this Consent Decree.

17.     Within 45 days of receipt of EPA's comments on the proposed SRCP (or if the Parties mutually agree to extend the time for PRASA to respond if EPA's comments on the proposed SRCP are extensive), PRASA shall modify the SRCP accordingly and resubmit it to EPA for final approval. Upon its approval by EPA, PRASA will have the option to further adapt the SRCP to the individual characteristics of the five PRASA Regions, provided the regionalized SRCPs are at least as effective as the EPA-approved SRCP. The regionalized SRCPs shall be submitted to EPA for approval. Upon EPA approval, the regionalized SRCPs shall be fully implemented by PRASA according to the regionalized SRCPs terms and schedules, and be incorporated into, and become enforceable under, this Consent Decree. If regionalized SRCPs are not submitted to EPA for approval within six months of the original EPA-approved SRCP, the original SRCP shall be fully implemented by PRASA according to its terms and schedules, and be incorporated into, and become enforceable under, this Consent Decree. The SRCP or regionalized SRCPs shall be fully implemented no later than three (3) years after entry of this Consent Decree (but no later than June 1, 2009). The parties agree to meet and confer, as needed, to discuss the development and implementation of the SRCP. (For purposes of the below Paragraphs in this Section, "SRCP" shall be deemed to include regionalized SRCPs if PRASA opts to develop them.)

18.     PRASA shall review the SRCP on an annual basis and update such plan as necessary. Each annual update of the SRCP shall be subject to EPA approval and upon EPA approval shall be incorporated into, and become enforceable under, this Consent Decree.

19.     PRASA shall be responsible for familiarizing the responsible officials and appropriate employees with the terms of the SRCP and, in the event of PRASA's failure to implement the SRCP, PRASA shall not raise as a defense its failure to so inform the responsible officials and appropriate employees.

20.     Any dispute with respect to any portion of the SRCP shall not delay the development or implementation of the undisputed portions of the SRCP, to the extent feasible.

21.     Any proposed amendment to the provisions of the SRCP identified therein as critical with respect to any Facility must be submitted by PRASA in writing to EPA for approval. No such proposed amendment to the SRCP shall be effective until EPA approves such amendment in writing.

22.     The requirements of this Section shall remain in effect with respect to each Facility for the period such Facility is subject to this Consent Decree in accordance with Section XXXI (Effectiveness and Termination).

## IX.  SANITARY SEWER SYSTEM EVALUATION AND REPAIRS

23.     PRASA initially shall develop and implement a Sanitary Sewer System Evaluation Plan ("SSSEP1") and a Sanitary Sewer System Repair Plan ("SSSRP1") for the Aguadilla, Bayamon, Isabela, Juncos, La Parguera, San Sebastian New and Unibon Morovis Facilities, meeting the minimum requirements set forth in Appendix H of this Consent Decree and in accordance with the schedule below. The Parties agree that the extent of repairs required

under the SSSRP are unknown and cannot be estimated until after the SSSEP1 are completed;

thus, the Parties agree to confer on an as needed basis, to discuss the relative priority to be given

to the implementation of the components of the SSSRP.

| Work to be Performed | Due Date |
|---|---|
| Draft Sanitary SSSEP1 and implementation schedule for submittal to EPA for review and comment | Within 18 months of date of entry, but no later than December 1, 2007 |
| Revised SSSEP1 submitted to EPA for approval, disapproval, or modification and approval | Within 90 days of receiving EPA's comments |
| SSSEP1 fully implemented | In accordance with approved SSSEP1 |
| Submission of results of the SSSEP1 and the submission of the SSSRP1 implementation schedule. | In accordance with approved SSSEP1 |
| Implementation of the Repairs in accordance with the EPA approved SSSRP1 schedule. | In accordance with approved SSSRP1 |

24.     PRASA shall develop and implement a Preliminary Sanitary Sewer System

Evaluation Plan ("PSSSEP") for all Facilities in Puerto Rico owned and/or operated or which

may be owned and/or operated by PRASA, with the exception of the seven (7) Facilities covered

by the SSSEP1 and SSSRP1, as specified above.  The PSSSEP shall meet the minimum

requirements listed as (A) through (C) in Appendix H of this Consent Decree.  Based on the

results of the PSSSEP, PRASA shall develop and implement a Sanitary Sewer System

Evaluation Plan ("SSSEP2") for the Facilities the PSSSEP identifies as requiring further

evaluation.  The SSSEP2 shall meet the minimum requirements listed as (D) through (F) in

Appendix H of this Consent Decree and shall be developed and implemented in accordance with

the schedule below.  The Parties agree that the extent of repairs required under the SSSRP2 are

unknown and cannot be estimated until after the SSSEP2 are completed; thus, the Parties agree

to confer on an as needed basis, to discuss the relative priority to be given to the implementation

of the components of the SSSRP2.

| Work to be Performed | Due Date |
|---|---|
| Draft PSSSEP and implementation schedule for submittal to EPA for review and comment | Within 24 months of date of entry, but no later than June 1, 2008 |
| Revised PSSSEP submitted to EPA for approval, disapproval, or modification and approval | Within 90 days of receiving EPA's comments |
| PSSSEP fully implemented | In accordance with approved PSSSEP |
| Draft SSSEP2 and implementation schedule for submittal to EPA for review and comment | Within 24 months of completing the PSSSEP |
| Revised SSSEP2 submitted to EPA for approval, disapproval, or modification and approval | Within 90 days of receiving EPA's comments |
| SSSEP2 fully implemented | In accordance with approved SSSEP2 |
| Submission of results of the SSSEP2 and a proposed schedule of implementation for SSSRP2 | In accordance with approved SSSEP2 |

25.    The parties agree it is not the purpose of this Consent Decree to require PRASA

to implement all system-wide changes that may be needed to its Collection System.  EPA

reserves its rights to bring claims for penalties  for violations of the Clean Water Act relating to

PRASA's Collection System, and to seek injunctive relief requiring implementation of system-

wide remedial measures to any portion of its Collection System.

X.  WASTE WATER TREATMENT CAPACITY MANAGEMENT

26.     PRASA's Existing Sewer Connection Policy. The Parties mutually agree that an

effective system for managing waste water treatment capacity is essential for protecting the

environment while also allowing economic growth and development on the Island.  The Parties

acknowledge that PRASA's SEWER CONNECTIONS POLICY AND MECHANISMS

(December 2005), attached to this Consent Decree as Appendix I, is an important step toward

creating an effective system for managing waste water treatment capacity and the Parties

mutually desire to give that system an opportunity to work.  Pursuant to said policy, PRASA has

prohibited additional sewer connections to the Toa Alta Heights, Maunabo, and Boqueron

WWTPs and will keep such existing bans in effect, subject to the termination procedure

provided in Paragraph 32.  PRASA has imposed a limitation hold for additional sewer

connections to the Camuy and Patillas WWTPs.  PRASA will continue to do so until PRASA

submits documentation satisfactory to EPA that Patillas or Camuy are meeting the secondary

treatment requirements.  EPA shall decide whether the secondary treatment requirements have

been met within fifteen (15) days of receiving such documentation from PRASA.  Except as

provided in Paragraph 27, PRASA shall maintain the SEWER CONNECTIONS POLICY, which

includes Appendix A to that Policy but not the other attachments.

27.     Notice of Changes.  In the event that PRASA proposes to change its SEWER

CONNECTIONS POLICY in any material respect from the version attached to this Consent

Decree as Appendix I, PRASA shall provide sixty (60) days written notice of the proposed

changes to EPA.  In the event that EPA objects in writing to any of the proposed changes on the

grounds that the changes would violate the purposes of this Consent Decree within sixty (60)

days after receiving notice, the changes objected to shall be temporarily held in abeyance and

shall not go into effect while the Parties pursue Dispute Resolution under Section XXII of this Consent Decree.

28.   Notice of Deficiency.   In the event that EPA believes that the implementation of the SEWER CONNECTIONS POLICY by PRASA is not effective at managing treatment capacity at one or more WWTPs, EPA shall provide written notice to PRASA of a deficiency, including a statement of EPA's reasons for believing that the PRASA's policies or implementation are not effectively managing WWTP capacity.   The Parties agree to meet informally within thirty (30) days to discuss changes to policies or implementation to cure the deficiencies.   If they are unable to agree on changes to policies or implementation to address the deficiencies, either Party may invoke Dispute Resolution under Section XXII of this Consent Decree.

29.   Automatic Sewer Ban.

(i)   Notwithstanding PRASA's SEWER CONNECTION POLICY, any pending attempts to address deficiencies, or any pending Dispute Resolution processes, if any WWTP exceeds one hundred five percent (105%) of its Monthly Average Permitted Flow as defined in its NPDES permit for three consecutive months or is predicted to exceed one hundred five percent (105%) based on flows that have been approved but not yet connected, PRASA shall immediately impose a ban on any applications for new sewer connections to such Facility.   The ban on new sewer connection includes any new flows that are added, connected, or transported (by any means) into the service area of a PRASA Facility, which flows are intended to be treated by that PRASA Facility.   For those plants that do not have a Monthly Average Permitted Flow limitation in its NPDES Permit, the Monthly Average Permitted Flow to be used in this Paragraph, is the Monthly Average Permitted Flow set forth in Appendix K.

(ii)   Any flows, either existing or anticipated, which PRASA has already

- 22 -

approved but which have not yet been connected or accepted at the Facility shall be allowed provided that the predicted Monthly Average Permitted Flow will not exceed one hundred five percent (105%).

30.    Exception for Pending Change to Permit Limit.   Notwithstanding the provisions of Paragraph 29, if PRASA has applied for an increase in the permitted treatment capacity of a WWTP and EPA concludes that there is a reasonable probability that it may be granted, and if said WWTP is in regular compliance with the effluent limitations of its NPDES permit, other than permitted flow, PRASA may continue to grant applications for new sewer connections while the application for an increase in permitted capacity is pending but not acted upon as long as the WWTP remains in regular compliance with the effluent limitations of its NPDES permit, other than permitted flow.

31.    Exception for Offsets.   Notwithstanding the provisions of Paragraph 29, if an applicant provides an offset in the amount of one-hundred ten percent (110%) of the amount the new connection will increase the demand for capacity if PRASA were to approve the application, PRASA may nonetheless grant the application for new sewer connections, conditioned on the actual performance of the offsets in an amount no less than one-hundred ten percent (110%) of the increase in capacity attributable to the application.  (For example, if an applicant applies for a new sewer connection that would add 10,000 gallons per day, the applicant must offset this increase with a reduction of 11,000 gallons per day).  The 110% offset may consist either of (1) an increase in the WWTP's treatment capacity to be completed prior to the approved flows being connected to or accepted at the WWTP, and/or (2) verifiable demand reductions (such as replacement of existing flow-generating equipment with more efficient equipment, or reduction of infiltration flows as by repair of lines).

- 23 -

32.     Termination of Automatic Sewer Ban.  Any automatic sewer connection ban imposed pursuant to Paragraph 29 shall be lifted once PRASA submits to EPA documentation certifying that measures have been implemented such that the average monthly flow to the WWTP is less than one hundred percent (100%) of the Monthly Average Permitted Flow for a period of two (2) consecutive months.

## XI.     REVIEW AND APPROVAL PROCEDURES

33.     Unless indicated otherwise in this Consent Decree, the following review and approval procedures set forth in this Section shall apply with respect to any plan, program or other document which is required to be submitted for EPA approval pursuant to this Consent Decree:

a.  After receipt and review of any plan, program or other document which is required to be submitted for approval pursuant to this Consent Decree, EPA may (1) approve the submission; (2) approve the submission or portions of the submission upon specified conditions; (3) approve part of the submission and disapprove the remainder; or (4) disapprove the submission and direct PRASA to modify the submission.

b. In the event of approval of the complete submission, PRASA shall proceed to take any actions required by the plan, program or other approved document, in accordance with the schedule contained therein, as approved in writing by EPA.

c. In the event of written approval of portions of the submission or approval upon specified conditions, PRASA shall proceed to take the actions identified in the non-deficient portion of the plan, program, other document, or portion thereof, if severable, in accordance with any applicable conditions specified by EPA, subject only to PRASA's right to invoke the

- 24 -

Dispute Resolution procedures set forth in Section XXII of this Consent Decree with respect to the conditions imposed or the disapproved portions. Implementation of any non-deficient portion of the submission shall not eliminate the potential for PRASA to incur stipulated penalties pursuant to Section XIII based on PRASA's failure to meet other approved requirements of the submission so long as such other approved requirements are technically severable from the disapproved portion(s) of the submission.

34.     Upon receipt of a notice of disapproval of all or part of a submission from EPA, PRASA shall, within 30 days, correct the deficiencies as directed by EPA's written comments and resubmit the plan, program or other document for approval. Any stipulated penalties applicable to the original submission, as provided in Section XIII of this Consent Decree, shall accrue during the 30-day period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or is materially deficient.

35.     In the event that a resubmitted plan, program or other document, or portion thereof, is disapproved by EPA, EPA may again require PRASA to correct the deficiencies in accordance with Paragraph 28, subject to PRASA's right to invoke the Dispute Resolution procedures set forth in Section XXII of this Consent Decree and the right of EPA to seek stipulated penalties as provided in Section XIII.

36.     If PRASA timely submits or resubmits an item for review and approval or comments under this Consent Decree, and if EPA fails to approve, provide comments or otherwise act on a submittal within sixty (60) days of receipt of the submittal, PRASA shall be entitled to an extension of any interim or final deadlines which PRASA can demonstrate that it will be unable to meet as a result of the length of the review process. Any such request must be in writing and must identify the deadlines for which an extension is requested, the length of the

extension requested, and set forth the basis for each such request. In the event that EPA should disapprove, in whole or in part, the extended deadline requested by PRASA, PRASA may invoke Section XXII (Dispute Resolution) of the Consent Decree.

37.     If PRASA submits or resubmits a plan, program or other document that fails to contain all of the required elements as set forth in the appropriate Section or Appendix pertaining to the requisite contents of the (i) Integrated Preventive Maintenance Program; (ii) Spill Response and Cleanup Plan; (iii) Sanitary Sewer System Evaluation Plans; (iv) Preliminary Sanitary Sewer System Evaluation Plans; (v) Sanitary Sewer System Repair Plan; (vi) Quarterly (or other) Progress Reports; or (vii) any submissions developed in accordance with Section V (Remedial Actions at Wastewater Treatment Plants), PRASA shall be deemed to have failed to make the submission, unless PRASA invokes the Dispute Resolution procedures in Section XXII. In the case of a submission or resubmission that fails to contain all the required elements, stipulated penalties begin to accrue on the date the submission or resubmission was due.

38.     PRASA may request in writing that EPA grant an extension of any deadline established by this Consent Decree, and EPA shall grant in writing if it determines that good faith efforts to comply with the timetables established in this Consent Decree have been made and good cause for the requested extension has been shown. The granting of such an extension pursuant to this Paragraph is not necessarily a "material modification" within the meaning of Section XXIX (Modification) of this Consent Decree.

## XII. CIVIL PENALTY

39.     PRASA shall pay $ 1,000,000 within 30 days of entry of this Consent Decree to the United States as a civil penalty.

40.     Payment of the civil penalty referenced in the proceeding Paragraph, and any interest thereon, shall be made by FedWire Electronics Funds Transfer ("EFT" or "wire transfer") to the U.S. Department of Justice account in accordance with current electronic funds transfer procedures, referencing the name, caption, civil action number, U.S.A.O. file number _____, EPA Region II, and DOJ case number 90-5-1-1-08385. Payment shall be made in accordance with instructions provided to PRASA by the Financial Litigation Unit of the United States Attorney's Office for the District of Puerto Rico following lodging of the Consent Decree. Any payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be credited on the next business day. PRASA shall send notice that such payment has been made to the United States as specified in Section XI and to:

> Chief, Financial Management Branch
> U.S. Environmental Protection Agency
> Region II
> 290 Broadway
> New York, NY 10007-1866

41.     If PRASA fails to pay the civil penalty within thirty (30) days of entry of this Consent Decree, then interest shall thereafter accrue at the rate calculated pursuant to 28 U.S.C. § 1961 through the date of payment. The payment of interest shall be in addition to any stipulated penalties that may accrue pursuant to Section XIII.

## XIII. STIPULATED PENALTIES

42.     PRASA shall be liable to pay to the United States, automatically and without notice or demand (except where indicated otherwise), stipulated penalties in the amounts set forth below for the below listed violations of this Consent Decree. Unless otherwise indicated, each violation described below pertains to each Facility covered by this Consent Decree:

a.     For each day that PRASA fails to complete the work specified for each Facility in accordance with the applicable schedules, including all benchmarks and interim deadlines, developed pursuant to Section V (Remedial Actions at Wastewater Treatment Plants) and Section IX (Sanitary Sewer System Evaluation and Repairs) of this Consent Decree, including schedules, benchmarks and interim deadlines developed after the effective date of this Consent Decree, PRASA shall be liable for stipulated penalties as follows:

| Period of noncompliance | Per day per violation |
|---|---|
| 1 - 60 days | $200 |
| 61 - 120 days | $1,000 |
| Over 120 days | $5,000 |

b.     For each interim effluent limitation exceeded, PRASA shall pay stipulated penalties as follows:

If a violation of a parameter occurs in one month, but that same parameter is not violated in the following month: $0

If a violation of a parameter occurs in one month, and that same parameter is violated in the following month:

| Percent above limit | Per day per violation |
|---|---|
| Up to 20% | $100 |
| 21 - 60% | $1,000 |
| Above 60% | $2,000 |

However, if a violation of the same parameter occurs five times or more in one calendar year, for the fifth and subsequent violations in that calendar year:

| Percent above limit | Per day per violation |
|---|---|
| Up to 20% | $200 |
| 21 - 60% | $2,000 |
| Above 60% | $4,000 |

- 28 -

PRASA may elect to summarize and assess the stipulated penalty amounts for these interim effluent limitation stipulated penalties in the quarterly report covering the last quarter of the calendar year provided that PRASA summarize each interim effluent limitation exceedance in the applicable quarterly report.

      c.      Unless an interim effluent limit applies pursuant to Section VI (Interim Effluent Limits), for each final NPDES Permit effluent limitation exceeded, PRASA shall pay stipulated penalties as follows:

If a violation of a parameter occurs in one month, but that same parameter is not violated in the following month: $0

If a violation of a parameter occurs in one month, and that same parameter is violated in the following month:

| Percent above limit | Per day per violation |
|---|---|
| Up to 20% | $200 |
| 21 - 60% | $1,250 |
| Above 60% | $2,500 |

However, if a violation of the same parameter occurs five times or more in one calendar year, for the fifth and subsequent violations in that calendar year:

| Percent above limit | Per day per violation |
|---|---|
| Up to 20% | $400 |
| 21 - 60% | $2,500 |
| Above 60% | $5,000 |

PRASA may elect to summarize and assess the stipulated penalty amounts for these final NPDES Permit effluent limitation stipulated penalties in the quarterly report covering the last quarter of the calendar year provided that PRASA summarize each final NPDES Permit effluent limitation exceedance in the applicable quarterly report.

Special provision concerning subparagraphs b. and c.: Any violation of a monthly average effluent limitation for either interim effluent limitations or the final NPDES Permit effluent limitations, PRASA shall pay stipulated penalites as follows:

| Percent above limit | Per violation |
|---------------------|---------------|
| Up to 20%           | $500          |
| Up to 40%           | $1,000        |
| Up to 60%           | $3,000        |
| Above 60%           | $6,000        |

Any new WWTP that starts operations or any facility whose treatment capacity has been increased by the construction of new treatment units as set forth in Appendix D (Capital Improvement Plan), shall not be subject to stipulated penalties for effluent limits violations for a "start-up" period of one hundred and twenty (120) days from beginning of its operation. Any remedial action that is identified with an asterisk as subject to a "start-up" period in Appendix B and C shall not be subject to stipulated penalties for effluent limit violations for a "start-up" period of thirty (30) days from beginning of its operation. After the "start-up" period, the WWTP shall comply with all its effluent limits and would be subjected to stipulated penalties if violations occur.

Beginning upon entry of this Decree, the stipulated penalty payments for interim and final effluent limits violations at each of the WWTPs shall be paid into an escrow account established by PRASA at a federally-chartered bank approved by EPA, bearing interest on commercially reasonable terms. In its Quarterly Progress Reports, PRASA shall identify by Plant each violation of interim and final effluent limits and the stipulated penalties associated with such violations. For any Plant(s) at which PRASA completes the short term or mid term remedial actions or long term capital improvements in accordance with the criteria set forth

below, a portion of the stipulated penalties accrued for PRASA's failure to comply with the interim and/or final effluent limits for that Plant shall not be due and owing and shall, after written concurrence by EPA, be returned to PRASA, including all interest that has accrued thereon. The amount that is not due and owing shall be calculated based on the percentages set forth below. If the short term or mid term remedial actions or long term capital improvements are not completed in a manner satisfying the below criteria, such escrowed funds will not be returned to PRASA, and such payments, including interest that has accrued thereon, shall then become due and owing to the United States in accordance with the payment provisions of this Section. The escrow provisions apply to the original deadlines identified in Appendices B - D of this Decree regardless of any extension, except with respect to those Facilities that are substituted in accordance with Paragraph 9 of this Decree or if an extension is granted to the schedules identified in Appendices B-D of this Decree, due to a force majeure event.

| Short term remedial action completion time | % of escrowed funds per Plant returned to PRASA |
|---|---|
| 10-20 days prior to due date | 20% |
| 21-40 days prior to due date | 30% |
| 41-60 days prior to due date | 50% |
| More than 61 days prior to due date | 60% |

| Mid-term remedial action completion time | % of escrowed funds per Plant returned to PRASA |
|---|---|
| 30 days prior to due date | 20% |
| 31- 60 days prior to due date | 40% |
| More than 61 days prior to due date | 50% |

| Long term capital improvement completion time | % of escrowed funds per Plant returned to PRASA |
|---|---|
| 60 days prior to due date | 20% |
| 61-100 days prior to due date | 40% |
| More than 100 days prior to due date | 50% |

d. Following a 120 day shakedown period after implementation of an approved SRCP, for each day of SSO violation that is not responded to in accordance with the Public Notification, Response and Investigation, and Cleanup provisions of the SRCP, PRASA shall, upon written notice by EPA in its discretion, pay the following stipulated penalties:

| Period of noncompliance | Per day per violation |
|---|---|
| Days 2 - 7 | $200 |
| Days 8 - 15 | $1,000 |
| Days 16 and over | $5,000 |

(i) For SSOs that are responded to in accordance with the approved SRCP no stipulated penalties will be assessed. For purposes of this subparagraph, respond shall mean investigate, provide notice of the SSO to EPA in accordance with the approved SRCP and 40 C.F.R. §§ 122.41(l)(6) and (m)(3)(ii), and take reasonable measures to mitigate the effect(s) of the spill that has a reasonable likelihood of adversely affecting human health or the environment in accordance with the approved SRCP and 40 C.F.R. § 122.41(d).

(ii) It is the expectation of the Parties that PRASA's Collection Systems will be addressed either in an amendment of this Consent Decree or a subsequent enforcement action; therefore, any stipulated penalties pursuant to this subparagraph 42.d. for PRASA's Collections Systems will expire on October 1, 2011, or earlier if superceded by an amended Consent Decree or through a subsequent enforcement action.

e. (i) For each effluent limitation (interim and/or final) established for each Plant that PRASA fails to report, or fails to report with a numeric value, to EPA in the monthly Discharge Monitoring Reports, PRASA shall pay stipulated penalties in the amount of $150 per parameter for every result not reported in that reporting period. For those monthly

average parameters that are not reported in the monthly Discharge Monitoring Report, PRASA

shall pay a stipulated penalty in the amount of $500 per parameter.  PRASA shall not have to

pay stipulated penalties if it submits an amended Discharge Monitoring Report for that reporting

period that supplies the missing data to cure the violation(s) under this subparagraph no later

than the due date of the Discharge Monitoring Report for the next reporting period.  Any re-

analysis done on samples taken must be done on samples taken in the month for which the

Discharge Monitoring Report was required.  If the entire Discharge Monitoring Report is

submitted late, PRASA shall pay stipulated penalties in the amount of $300 per day for the first

ten (10) days and $1,000 per day thereafter.

    (ii)  For each day PRASA fails to report to EPA that a Facility has met

the conditions for reincorporation into the designated stipulated penalties provisions as required

by Section XV, PRASA shall pay $300 per day of violation.

    f.  (i)  For each day PRASA fails to submit the following deliverables:

(i) Integrated Preventive Maintenance Program; (ii) Spill Response and Cleanup Plan; (iii)

Sanitary Sewer System Evaluation Plans; (iv) Preliminary Sanitary Sewer System Evaluation

Plans; (v) Sanitary Sewer System Repair Plan; (vi) any submissions developed in accordance

with to Section V (Remedial Actions at Wastewater Treatment Plants), by the dates on which

such documents are required to be submitted pursuant to this Consent Decree, PRASA shall pay

stipulated penalties as follows:

| Period of noncompliance | Per day per violation |
|---|---|
| Days 1 - 30 | $500 |
| Over 31 days | $5,000 |

(ii)    For each day PRASA fails to submit Quarterly (or other) Progress Reports, PRASA shall pay stipulated penalties as follows:

| Period of noncompliance | Per day per violation |
|---|---|
| Days 7 - 14 | $200 |
| Days 15 - 30 | $1,000 |
| Over 31 days | $5,000 |

Such payments shall be paid into an escrow account established by PRASA at a federally-chartered bank approved by EPA, bearing interest on commercially reasonable terms. If PRASA meets the final implementation date for which the deliverable was required, the money paid into the escrow account for the failure to timely submit the associated deliverable shall be returned to PRASA. If such implementation date is not met, such payments shall then become due and owing to the U.S. Treasury in accordance with the penalty payment provisions in Paragraph 43.

g.    For each day that PRASA fails to make payment of the civil penalty in accordance with the provisions of Section XII (Civil Penalty), PRASA shall pay stipulated penalties as follows:

| Period of noncompliance | Per day per violation |
|---|---|
| Days 1 - 30 | $1,000 |
| Days 31- 60 | $25,000 |
| Over 61 days | $200,000 |

h. (i)   For each violation of a key component of the IPMP at each Facility for which EPA has provided written notice to PRASA, PRASA shall pay stipulated penalties as follows:

| Notice per key component | Payment per notice |
|---|---|
| First notice | $500 |
| Second notice | $1,000 |
| Third notice | $5,000 |

If EPA identifies the same IPMP violation of any key component at more than ten (10) Plants in any quarter, PRASA shall pay double the above amounts for each Plant where such violation has been identified. For purposes of this subparagraph, the "key components" of the IPMP include:  Recordkeeing, Maintenance Planning and Scheduling, Storeroom and Inventory System, and Maintenance Personnel Training and Organization, as these terms are further defined in Appendix F.

(ii)     EPA may provide notice of failure to implement non-key components of the IPMP if, in its discretion, EPA determines that such failure or failures are hindering PRASA's compliance with this Consent Decree.  However, stipulated penalties for such violations shall not exceed $100 per notice.

(iii)    Stipulated penalties assessed under this subparagraph h. are due only upon written demand from EPA.

(iv)    For purposes of this Paragraph 42.h., implementation includes establishing the applicable minimum requirements of the IPMP within the specified timeframes as well as conducting training and taking reasonable steps to ensure that the IPMP is followed.

43.     Any stipulated penalty based upon a violation of a Consent Decree provision shall be paid to the United States.

44.     Payment of stipulated penalties pursuant to this Section shall be made within thirty (30) days following submittal of the Quarterly Progress Report for the period in which the violation(s) occurred.  For penalties demanded pursuant to subparagraphs d. and h. of Paragraph

42, payment shall be made within thirty (30) days following submittal of the Quarterly Progress Report for the period in which demand for the penalty was received.

45.     All stipulated penalties begin to accrue on the day that complete performance is due or a violation occurs, and continue to accrue through, and including, the day on which such violation or other noncompliance is remedied. Nothing herein shall preclude the simultaneous accrual of separate stipulated penalties for separate violations of this Consent Decree.

46.     In the event that a civil or stipulated penalty is not paid when due without demand, the penalty shall be payable with interest from the original due date to the date of payment, at the statutory judgment rate set forth at 28 U.S.C. § 1961, plus one percent (1%), and plus the amount of the United States' reasonable costs, attorneys' fees or other expenses incurred in seeking payment of the civil or stipulated penalty.

47.     Stipulated penalties paid to the United States under this Section shall be paid by certified check payable to the "Treasurer of the United States," and tendered to the Unites States Attorney for the District of Puerto Rico. A copy of the check, the letter tendering such check, together with a report setting forth the computations made in determining such penalties, and a transmittal document identifying this action, the requirement(s) of this Consent Decree which was not complied with, the date(s) of non-compliance, and the amount of payment shall be mailed to EPA and the United States Department of Justice at the addresses set forth in Section XIX (Notices).

48.     Nothing in this Section shall be construed as prohibiting, altering, or in any way limiting the rights of the United States to seek additional remedies or sanctions, pursuant to other provisions of this Consent Decree or of any applicable statutes and regulations, including

- 36 -

seeking injunctive or other relief for PRASA's failure to implement the injunctive relief
provisions as agreed to in this Consent Decree.

49.     Upon entry of this Consent Decree, the stipulated penalty provisions of this
Consent Decree shall be applicable and enforceable with regard to any violation that has
occurred after the date of entry of this Consent Decree, except that stipulated penalties for
violations related to the dates for Remedial Actions and to the submission of Deliverables shall
begin to accrue after the date of lodging of this Consent Decree and prior to the date of entry of
this Consent Decree. Stipulated penalties accruing between the date of lodging and the date of
entry shall be paid within thirty (30) days of submission of the first Quarterly Progress Report
required under this Consent Decree.

## XIV. REMOVAL OF FACILITIES FROM DESIGNATED STIPULATED PENALTY PROVISIONS

50.     The parties agree that the Facilities subject to this Consent Decree will be eligible
to be removed from certain stipulated penalty provisions of the Consent Decree, set forth below.
For a Facility to be eligible for removal from the designated stipulated penalty provisions,
PRASA must demonstrate that such Facility is in compliance with the following requirements of
this Consent Decree:

a.     Payment in full of any and all penalties due under this Consent Decree;

b.     Compliance with all final permit effluent limitations and Permit
conditions, as evidenced in the DMRs, for six (6) consecutive months preceding the date on
which removal from designated stipulated penalties is sought; and

c.     All short term and mid term remedial actions and long term capital
improvements required under Section V of this Consent Decree have been completed.

51.     No Facility shall be eligible for removal from designated stipulated penalties until EPA has approved PRASA's proposed SRCP, SSSEP1, PSSSEP, SSSEP2 and SSSRP (where applicable), and an EPA-approved IPMP has been implemented at that Plant for at least eighteen (18) months without any notices of failure to comply with key components of the IPMP having been issued by EPA for six (6) consecutive months preceding the date on which removal from designated stipulated penalties is sought.

52.     When the above conditions are met, PRASA will certify in writing that it has complied with all applicable requirements of this Section with regard to the Facility and request to EPA that the Facility be removed from the designated stipulated penalty provisions of the Consent Decree.

53.     EPA will review all relevant compliance information as to that Facility, including, but not limited to, DMRs and Quarterly Progress Reports, to determine whether that Plant has met the requirements of this Section for removal from designated stipulated penalties. EPA reserves the right to inspect any Facility prior to its removal from the designated stipulated penalty provisions of this Consent Decree.

54.     EPA shall inform PRASA in writing of its determination regarding whether the Facility meets the requirements of this Section. Designated stipulated penalties shall be tolled during this review period. If EPA determines that the requirements of this Section have not been met as to that Plant, the designated stipulated penalties, if any, shall be retroactively imposed and shall be paid in accordance with the provisions of Section XIII (Stipulated Penalties) of this Consent Decree. If EPA determines that the requirements of this Section have been met as to that Plant, it shall confirm this determination to PRASA in writing.

55. For purposes of this Section and Section XV, below, "designated stipulated penalties" include subparagraphs b. and c. of Section XIII (Stipulated Penalties).

56. Nothing herein shall relieve PRASA from complying with all other provisions of this Consent Decree with respect to any Facilities that have been removed from the designated stipulated penalties provisions.

## XV. REINCORPORATION OF FACILITIES INTO DESIGNATED STIPULATED PENALTY PROVISIONS

57. A Facility removed from the designated stipulated penalties provisions of this Consent Decree shall be reincorporated in the designated stipulated penalties provisions if the Facility is in noncompliance with final effluent limit by the percentage identified below for a period of three consecutive months, based on the following criteria:

Conventional Pollutants (40% exceedance of limit)

Biochemical Oxygen Demand
Total Suspended Solids
Total Dissolved Solids
Flow
Inorganic Phosphorus Compounds
Inorganic Nitrogen Compounds
Oil and Grease
Fecal Coliform
Total Coliform
Enterococcus

Toxic Pollutants (20% exceedance of limit)

Metals
Cyanide
Total Residual Chlorine

- 39 -

58.     In the event that any parameter listed above is in noncompliance for three consecutive months (three DMR reporting cycles), PRASA shall notify EPA that the facility meets the reincorporation criteria in the next Quarterly Report submitted.

59.     Upon receipt of notice from PRASA in the Quarterly Report, that such Facility is in noncompliance with the criteria identified in this Section or when EPA determines that such conditions as set forth in Paragraph 58 have been met and so notifies PRASA, such Facility shall be deemed reincorporated into the designated stipulated penalties provisions without further action by EPA.   For purposes of this Paragraph, the assessment of stipulated penalties shall begin to accrue from the day the Facility satisfies the conditions as set forth in Paragraph 57.

60.     Any designated stipulated penalties accruing subsequent to the three month noncompliance period shall be double the amounts set forth in Section IX (Stipulated Penalties) of this Consent Decree.   Non-designated stipulated penalties shall remain at the original amounts as set forth in that Section.   All stipulated penalties shall be due and payable in the manner prescribed in Section XIII.

## XVI.  QUARTERLY PROGRESS REPORTS

61.     Beginning October 1, 2006 for the period covering June 2006 through August 2006 and every three (3) months thereafter throughout the effective period of this Consent Decree, PRASA shall submit to EPA a written report on a quarterly basis detailing the current status and/or progress of the actions taken in compliance with this Consent Decree.   The Quarterly Progress Report shall report on PRASA's activities with regard to Sections V through XV and XXIII of this Consent Decree, along with all pertinent Deliverables required to be submitted under this Consent Decree, and at a minimum shall set forth:

        a.     the specific activities undertaken by PRASA relating to completion of work required under the compliance schedules specified in this Consent Decree, including but not limited to the expected date for the Substantial Completion of any of the remedial actions or capital improvements identified in Paragraph 8, and identification of those requirements which have been accomplished since the previous report, including the dates of Substantial Completion of any of the remedial actions or capital improvements identified in Paragraph 8.

        b.     any impediments encountered by PRASA in meeting the compliance schedules under this Consent Decree, the steps that have been taken by PRASA to overcome such impediments, and the steps that are to be taken by PRASA to overcome such impediments, including the anticipated dates by which such steps will be taken;

        c.     a list of all Facilities that have been shut down or otherwise taken off-line or consolidated with other Facilities, and all new Facilities that have commenced operation or existing Facilities that have been returned to service during the preceding reporting period, such list to include the name and address of each such Facility and identification of the NPDES or other Permit authorizing its operation;

        d.     a description of the requirements of this Consent Decree subject to stipulated penalties which were not complied with, the dates of such non-compliance and the computations made in determining the amount of stipulated penalties due; and

        e.     as to effluent limitation violations, stipulated penalty calculations shall be reported for each individual Plant.

        f.     any change in PRASA personnel at the Executive President and Regional Director levels.

62.    PRASA shall submit the Quarterly Progress Reports within thirty (30) days after the end of the three month period being reported. The above reporting requirements do not relieve PRASA of the obligation to submit reports or information required by the CWA, regulations promulgated thereunder, the NPDES Permits, or any other permit or local or federal law.

63.    PRASA may elect to submit separate Quarterly Progress Reports from its five regional offices, provided (i) the same information described in this Section is included in such reports; (ii) the Responsible Official and Regional Director(s) of PRASA have certified in writing that each has reviewed each report prior to submission to EPA; and (iii) PRASA has complied with 40 C.F.R. § 122.22 with respect to authorizing the appropriate Regional Directors as signatories. EPA may, in its discretion, and upon thirty (30) days notice in writing to PRASA, require that PRASA submit only one Quarterly Progress Report per submittal date.

64.    All Quarterly Progress Reports and other submissions required pursuant to this Consent Decree shall be in English and signed by a Responsible Official, which shall include Regional Directors if PRASA elects to submit regional reports. The Quarterly Progress Reports and all other submissions shall contain the following certification:

> "I certify that based on my inquiry of the person or persons directly responsible for gathering the information, the information contained in or accompanying this submission is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, or for failure to submit information required to be submitted under this Consent Decree, including the possibility of fine and imprisonment for knowing violations."

65.    The Parties may agree that PRASA shall be required to submit Progress Reports on a triannual, rather than on a quarterly basis. Such agreement must be memorialized in writing

- 42 -

by both Parties, and shall not be considered a "material modification" for purposes of Section XXIX of this Consent Decree.

## XVII. QUARTERLY PROGRESS MEETINGS

66.     Representatives of EPA and PRASA shall convene informally at least on a quarterly basis pursuant to a mutually agreed-upon schedule to discuss PRASA's ongoing progress under the Consent Decree. The meeting should cover at least the following subjects:

      a.     Progress in the implementation of the actions required by this Consent Decree;

      b.     Potential problems that may adversely affect progress in implementing the actions required by this Consent Decree;

      c.     Measures that PRASA intends to take to correct problems and deficiencies encountered by PRASA or found by EPA in its inspections of any facility covered by this Consent Decree; and Status of compliance with effluent limits.

67.     If, as a result of discussions at the Quarterly Progress Meetings, EPA and PRASA agree on actions to be taken and a schedule for such action that are not otherwise provided for in this Consent Decree, the Parties shall, after consultation with counsel, follow the procedure set forth in Section XXIX (Modification).

## XVIII. FORCE MAJEURE

68.     PRASA's obligation to comply with one or more of the provisions of this Consent Decree shall be deferred or, in the sole discretion of EPA, excused, to the extent that the delay in compliance or the non-compliance is caused by a "force majeure" event. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control

- 43 -

of PRASA that delays or prevents the performance of any obligation or causes a non-compliance under this Consent Decree despite PRASA's best efforts to fulfill the obligation. The requirement that PRASA exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (i) as it is occurring; and (ii) following the potential force majeure, such that the delay is minimized to the greatest extent possible. "Force majeure" shall not include any delay due to unanticipated or increased costs of achieving and maintaining compliance with any provision of this Consent Decree or PRASA's financial inability to implement any provision of this Consent Decree. PRASA's failure to obtain any necessary permit or approval shall not be deemed a force majeure unless PRASA demonstrates that it exercised due diligence in promptly pursuing such permit application or approval. The Parties agree that, depending upon the circumstances related to an event and PRASA's response to such circumstances, the kinds of events listed below are among those that could qualify as "force majeure events" within the meaning of this Section: fire, hurricane, flood, riot, terrorism, or other circumstances beyond the control of, and without the fault of PRASA, or any entity controlled by PRASA, including PRASA's consultants and contractors.

69.    If any alleged force majeure event occurs or has occurred that may delay the performance or cause a non-compliance of any obligation under this Consent Decree, PRASA shall notify EPA no later than five (5) working days after PRASA first knew or should have known that the event might cause a delay. Within ten (10) days thereafter, PRASA shall provide in writing to EPA an explanation and description of the reasons for the delay or non-compliance; the anticipated duration of the delay or non-compliance; all actions taken or to be taken to

- 44 -

prevent or minimize the delay or non-compliance; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or non-compliance or the effect of the delay or non-compliance; and PRASA's reason(s) for attributing such delay to a <u>force majeure</u>, if PRASA intends to assert such a claim. Any written claim of a <u>force majeure</u> event shall be detailed and Facility-specific. PRASA shall include with any notice all available documentation supporting the claim that the delay was attributable to a <u>force majeure</u>.

70. Failure to comply with the above procedures regarding notification and reporting shall preclude PRASA from asserting any claim of <u>force majeure</u> for that event for the period of time of such failure to comply, unless such failure to comply with the foregoing procedures regarding notification is itself attributable to a <u>force majeure</u> event. PRASA further agrees that, notwithstanding giving notice to EPA within five (5) working days, any unreasonable delay in notifying EPA of an alleged <u>force majeure</u> event may hinder or preclude EPA from substantiating an assertion by PRASA that the delay in compliance or the non-compliance in question is attributable to a <u>force majeure</u> event.

71. If EPA agrees that the delay or non-compliance or anticipated delay or non-compliance is attributable to a <u>force majeure</u>, the time for implementation of the applicable portions of this Consent Decree that are affected by the <u>force majeure</u> will be extended by EPA for a period to compensate for the delay resulting from such event, and stipulated penalties shall not accrue for such period. An extension of time for performance of the obligations affected by the <u>force majeure</u> shall not, of itself, extend the time for performance of any other obligation or toll the accrual of stipulated penalties for failure to perform such obligation. If EPA does not agree that the delay or non-compliance or anticipated delay or non-compliance has been or will

- 45 -

be caused by a <u>force majeure</u>, EPA will notify PRASA in writing of its decision. If EPA agrees that the delay is attributable to a <u>force majeure</u>, EPA will notify PRASA in writing of the length of the extension, if any, for performance of the obligations affected by the <u>force majeure</u>.

72.    If PRASA elects to invoke the dispute resolution procedures set forth in Section XXII, with regard to a <u>force majeure</u> determination, it shall do so no later than thirty (30) days after receipt of EPA's written notice of its decision pursuant to Paragraph 71, above.  In any such proceeding, PRASA shall have the burden of demonstrating by a preponderance of the evidence that the delay or non-compliance or anticipated delay or non-compliance has been or will be caused by a <u>force majeure</u>, that the duration of the delay or non-compliance or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid or mitigate the effects of the delay, and that PRASA complied with the requirements of this Section of the Consent Decree.  If PRASA carries the burden, the delay at issue shall be deemed not to be a violation by PRASA of the affected obligation of this Consent Decree identified to EPA and to the Court.

## XIX.  NOTICES

73.    Whenever under the terms of this Consent Decree notice is to be given, or a report or other document is to be forwarded by one party to another, it shall be directed to the following addresses unless otherwise provided in this Consent Decree or unless the sending party has been advised by the receiving party that such notice and reports should be forwarded to a different individual or address.  Any such materials shall be in English and shall include a reference to the name, caption and number of this action.

As to the United States:

Director, Caribbean Environmental Protection Division
United States Environmental Protection Agency
Centro Europa Building
1492 Ponce de León Avenue, Suite 417
San Juan, Puerto Rico 00907-4127

Chief, Water and General Law Branch
Office of Regional Counsel
Unites States Environmental Protection Agency
Region II
290 Broadway, 16th Fl.
New York, New York   10007

By mail:                                                      or By courier or express mail:

Chief, Environmental Enforcement Section      Chief, Environmental Enforcement Section
Environment & Natural Resources Division      Environment & Natural Resources Division
U.S. Department of Justice                             U.S. Department of Justice
P.O. Box 7611, Ben Franklin Stn.                  601 D Street, N.W., Room 2121
Washington, D.C. 20044-7611                              Washington, D.C.  20005


For judicial filings only:

United States Attorney
District of Puerto Rico
Federal Office Building, Rm. 101
Carlos E. Chardón Avenue
San Juan, Puerto Rico 00918

As to PRASA:

By mail:                                                      or By courier or express mail:

Office of General Counsel                            Office of General Counsel
Puerto Rico Aqueduct & Sewer Authority     Puerto Rico Aqueduct & Sewer Authority
P.O. Box 7066                                              Sergio Cuevas Bustamante Building
San Juan, Puerto Rico 00916-7066                604 Avenida Barbosa
                                                                   10th Floor
                                                                   San Juan, Puerto Rico 00917

Rafael Lama
Compliance and Quality Control Office
Puerto Rico Aqueduct & Sewer Authority
P.O. Box 7066
San Juan, Puerto Rico 00916-7066

Rafael Lama
Compliance and Quality Control Office
Puerto Rico Aqueduct & Sewer Authority
Sergio Cuevas Bustamante Building
604 Avenida Barbosa
7th Floor
San Juan, Puerto Rico 00916

E. Donald Elliott
Carrie F. Jenks
Willkie Farr & Gallagher LLP
1875 K Street, NW
Washington, DC 20006

74.     Delivery shall be considered complete upon deposit of the material at issue in the express mail, express courier service, or certified mail, or as otherwise specifically provided herein.

75.     Documents required to be submitted under the terms of this Consent Decree may be submitted electronically, provided a paper copy is timely submitted to the Director of the Caribbean Environmental Protection Division in Puerto Rico.

## XX.  ACCESS TO THE FACILITIES

76.     Nothing in this Consent Decree in any way limits any right of entry or access to PRASA facilities available to EPA pursuant to applicable federal or Commonwealth laws, regulations or permits.

- 48 -

## XXI. RECORD RETENTION

77.     Unless otherwise specified in this Consent Decree, PRASA shall preserve an original or a copy of all records, logs, and documents required to be kept under the Clean Water Act, any applicable regulations promulgated thereunder, and pursuant to the IPMPs for each individual facility for at least two (2) years after the termination of this Consent Decree, or as long as is required under the CWA, regulation, or Permit, if longer. Drafts of documents for which a final version has been submitted to EPA pursuant to this Consent Decree need not be retained. Upon request by EPA, PRASA shall provide copies to EPA of any such records, logs, and documents during the periods PRASA is required to preserve an original or copy of such records, logs, and documents. Provided, however, that PRASA may eliminate documents after five (5) years upon written notice to EPA listing the documents PRASA plans to destroy and EPA's written approval. If EPA does not respond in writing within 90 days of receiving such notice, PRASA may destroy such documents.

78.     For purposes of this Section and of Section XIII (Stipulated Penalties), PRASA shall be required to preserve at least the following records, logs and documents:

     a.     Plant log books;

     b.     Unanticipated Bypass notifications (both 24 hour and/or five day notices);

     c.     Computerized or other written maintenance management system files in which routine facility maintenance information is loaded or otherwise recorded, including job orders for corrective or preventive maintenance for each facility;

     d.     Inspection punch list or report performed at each facility, compiled daily, weekly, monthly, semi-annually or annually, as applicable; and

     e.     Police reports documenting employee security and/or vandalism-related

incidents.

## XXII.  DISPUTE RESOLUTION

79.     The Parties shall make reasonable efforts informally and in good faith to resolve all disputes or differences of opinion regarding the meaning or implementation of this Consent Decree.  In the event that the Parties cannot resolve any such dispute, then the interpretation advanced by EPA shall be considered binding unless PRASA invokes the dispute resolution provisions of this Section.

80.     If, in the opinion of any party there is a dispute with respect to the meaning or implementation of any provision of this Consent Decree, that Party shall send a written notice to the other Party which outlines the nature of the dispute and requests informal negotiations to resolve the dispute.  Such period of informal negotiations shall not extend beyond forty-five (45) days from the date when the notice was sent unless the Parties agree otherwise.

81.     If informal negotiations are unsuccessful, following the close of negotiations, EPA shall provide in writing to PRASA a statement of position regarding the subject of the dispute within 45 days following the close of negotiations.  EPA's statement of position may include or reference, but not necessarily be limited to, any factual data, analysis, or opinion supporting that position and all supporting documents relied upon by EPA.  If EPA does not issue its statement of position within the prescribed period, PRASA may apply for an order of the Court to require EPA to provide its position in writing.

82.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted by either Party, and shall contain EPA's final statement of position.  EPA's position shall control unless PRASA files with the Court a petition which shall describe the nature of the dispute and include

a proposal for its resolution. Petitions by PRASA must be filed no more than twenty (20) days after receipt by PRASA of EPA's final position. The United States shall then have twenty (20) days to respond to any such petitions. In any such dispute, and subject to the provisions of Section XVIII (Force Majeure), PRASA shall have the burden of proving that EPA's position is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's position shall be based on the administrative record.

83.     Invocation of the dispute resolution procedures shall not toll the accrual of stipulated penalties or any deadlines affected by the dispute, unless the Parties agree in writing or the Court issues an order otherwise. In any event, payment of any accrued stipulated penalties shall be stayed pending the outcome of the dispute resolution process.

## XXIII. SUPPLEMENTAL ENVIRONMENTAL PROJECT

84.  a.   Within 180 days of entry of this Consent Decree, but no later than December 1, 2006, PRASA shall establish an escrow account to fund the SEP in accordance with the provisions of this Section. The escrow account shall bear interest. The escrow account shall be funded in four payments over two years for a total of three million dollars ($3,000,000) (the "SEP amount"). PRASA shall make an initial payment of $750,000 into the escrow account within 180 days of entry of this Consent Decree, but no later than December 1, 2006. PRASA shall make a second payment of $750,000 into the escrow account within 360 days of entry of this Consent Decree, but no later than June 1, 2007. PRASA shall make a third payment of $750,000 into the escrow account within 540 days of entry of this Consent Decree, but no later than December 1, 2007. PRASA shall make a fourth a payment of $750,000 into the escrow account within 720 days of entry of this Consent Decree, but no later than June 1, 2008.

b. The escrow account shall be in the name of PRASA, shall be established at the Government Development Bank for Puerto Rico, and shall be known as the PRASA System Action Trust Fund (the "Fund"). The Fund shall be funded as provided in subparagraph a. above, and all monies in the Fund shall be held in trust for the purpose of financing PRASA's undertaking of the SEP described below. Monies in the Fund shall be disbursed to PRASA to pay for costs incurred, under contract or by force account, in implementing the SEP. PRASA shall not use any funds placed into the escrow account established under this subparagraph for any purpose other than providing sewer service to at least one community that has historically not been connected to PRASA's wastewater collection system as described in Paragraph 85 and for necessary administrative costs for the escrow account. Disbursements from the Fund shall be documented with written records as to (i) the amount to be paid, (ii) a certification that each item for which payment is sought has been completed, is a proper charge against the Fund, and has not been the basis of any previous requisition, (iii) if a payment is to reimburse PRASA for expenses incurred by PRASA by reason of work performed by PRASA, a certification that the amount does not exceed the actual costs thereof to PRASA, and (iv) if a payment is to reimburse PRASA for payments made by it or to fund payments to be made by PRASA to contractors or vendors, the name of the person, firm or corporation to which payment relates and the nature and the cost of the work performed, supported by customary invoices or other appropriate documentation. The written records described in this Paragraph shall be made available to EPA upon request. Under no circumstances shall PRASA spend more than 20% of the SEP amount for costs associated with the selection, planning and design process.

85.  PRASA shall commit at least $3 million to provide sewer service (which shall include the connections to private residences in the community) to at least one community that has historically not been connected to PRASA's wastewater collection system.  The watersheds that shall be considered for this project are the La Plata and Rio Grande de Loíza watersheds, or PRASA may propose another watershed to EPA for approval if PRASA is unable to find a suitable community(ies) within one of these two watersheds.

Environmentally Beneficial Project.  The SEP will minimize adverse environmental impacts to the island's watersheds.  Communities without sewer service typically direct their wastewater discharges either to individual privately owned septic tanks, or there may be instances where wastewater discharges directly to nearby bodies of water through illegal discharges. By providing wastewater treatment to a community that currently discharges its untreated sewage into the environment the project will improve, protect and reduce risks to public health and the environment.

PRASA Is Not Otherwise Legally Required To Perform The SEP.  The SEP will benefit public health and the environment, not PRASA.  The communities that will be considered for the performance of a SEP under this Section have historically not been connected to PRASA's wastewater system and PRASA is not legally obligated to provide wastewater treatment service to these communities within the timeframe proposed for the performance of  the SEP under this Section.

Within 180 days of entry of this Consent Decree, but no later than December 1, 2006, PRASA will present to EPA for approval an Action Plan to establish a process for the selection

- 53 -

of at least one community for the performance of the SEP under this Section. Among those factors which PRASA shall consider in selecting the community to be connected to the publicly owned waste water treatment facility are: 1) proximity to drinking water source(s); 2) population served to maximize the number of households benefitted from the connection; 3) history of septic tank failures and/or flooding that has occurred in the community resulting in septic seepage; and 4) feasibility to complete project. Within two years of entry of this Consent Decree, but no later than June 1, 2008, PRASA shall select at least one community for the performance of the SEP under this Section. PRASA's selection must be presented to EPA for its approval. PRASA will Substantially Complete the SEP within seven years of the entry of this Consent Decree, but no later than June 1, 2013.

86. With regard to the SEP, PRASA certifies the truth and accuracy of each of the following:

a. That, as of the effective date of this Consent Decree, PRASA is not required to perform or develop the SEP by any federal, state or local law or regulation within the proposed timeframe, nor is PRASA required to perform or develop the SEP by agreement, grant or as injunctive relief awarded in any other action in any forum;

b. That the SEP is not a project that PRASA was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Consent Decree;

- 54 -

c. That PRASA has not received, and is not negotiating to receive, credit for the SEP in any other enforcement action; and That PRASA will not receive any reimbursement for any portion of the SEP from any other person.

87. Within 180 days of EPA's approval of the selected community for the performance of the SEP under this Section, PRASA shall submit to EPA a Scope of Work ("SOW") for the SEP. The SOW shall include, at a minimum, detailed descriptions of each discrete task or phase of the SEP, along with milestones for each such activity, construction plan submissions dates, bidding schedules and award schedules for each construction contract, the total cost of developing and implementing the SEP, and shall provide for submissions to EPA of regular Quarterly Progress Reports throughout the implementation of the SEP. The SOW shall be subject to EPA approval, and, upon such approval, shall be incorporated by reference into this Consent Decree and be a fully enforceable provision hereof.

88. Subject to the exception set forth in Paragraph 93 below, the total expenditure for the SEP shall be not less than the SEP amount.

89. In addition to the SOW and regular progress reports, PRASA shall submit a final SEP Completion Report within three months of completion of the SEP, in accordance with the schedule set forth in the SOW. Such final report shall include the following:

a. A detailed description of the completed SEP, any implementation problems encountered, and the solutions thereto;

b.       Certification that the SEP has been fully implemented pursuant to the provisions of this Consent Decree;

c.       A description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits, if feasible);

d.       A summary of the final costs associated with the SEP, together with itemization of those costs, documented by copies of invoices, purchase orders and receipts, canceled checks or other documentation that specifically identifies and itemizes the individual costs of goods and/or services for which payments has been made;

e.       A certification that no federal grants, low-interest federal loans, federal contracts, or other forms of federal financial assistance or non-financial assistance (e.g., loan guarantees) were used, in whole or in part, to carry out the work required to implement or complete the SEP.

90.   PRASA bears the burden of clearly segregating eligible SEP costs from other costs not eligible for SEP credit. Any non-segregable cost items that include non-SEP eligible costs shall be disallowed in their entirety. For purposes of determining SEP costs, acceptable evidence shall include invoices, purchase orders, or other documentation that specifically identifies and itemizes the individual costs of the goods or services for which payment is made. Canceled drafts do not constitute acceptable evidence unless such drafts specifically identify and itemize the individual costs of the goods or services for which payment is made.

91.  PRASA agrees that failure to submit the Action Plan, SOW, regular SEP progress reports, and/or the SEP Completion Report, as required above, shall be deemed a violation of this Consent Decree, and PRASA shall become liable for stipulated penalties in the amounts set forth below.

92.  PRASA shall submit all notices and reports required by this Section in the manner and to the persons specified in Section XIX (Notices) of the Consent Decree.  All SEP related submissions, including but not limited to the SEP Completion Report, shall be signed by a responsible official and contain the certification specified in Paragraph 64.

93.  In the event that PRASA fails to comply with any of the terms or provisions of this Consent Decree relating to the performance of the SEP, and/or to the extent that the actual expenditures for the SEP do not equal or exceed the SEP amount as agreed to herein, PRASA shall be liable for stipulated penalties according to the provisions set forth below:

a.  If the SEP is completed satisfactorily, but EPA determines that PRASA has certified, with supporting documentation, that at least 90 percent of the SEP amount was expended on the SEP, PRASA shall not be liable for stipulated penalties related to that SEP; however, the balance of the SEP amount, plus any interest that has accrued thereon, shall be applied toward the operation and maintenance of the SEP to the extent practicable.

b.  If the SEP is completed satisfactorily, but EPA determines that PRASA has certified, with supporting documentation, that less than 90 percent of the SEP amount was expended on the SEP, PRASA shall pay a stipulated penalty in the amount of the difference between the SEP amount and the amount actually expended.

- 57 -

c.  If PRASA halts or abandons work on the SEP before providing sewer service to at least one community that has historically not been connected to PRASA's wastewater collection system, PRASA shall pay to EPA the balance of the escrow account established pursuant to Paragraph 84, and pay a stipulated penalty in the amount of $300,000, in addition to any penalty required under subparagraph d. below, up to the time that the penalty under this subparagraph accrues.  The penalty under this subparagraph shall accrue as of the date specified for completing the SEP in Paragraph 85 or the date performance ceases, whichever is earlier.

d.  For failure to submit any report or other document required to be submitted under this Section for the SEP, PRASA shall pay a stipulated penalty in the amount of $100  per day for the first 10 workdays after the deliverable is due and $500 per day thereafter for each day after its due date until the report or other document is submitted.

94.  Stipulated penalties for subparagraph d. of the preceding paragraph shall begin to accrue on the day after performance is due, and shall continue to accrue up to, but exclusive of, the date the reports are submitted.

95.  The determinations of whether the SEP has been satisfactorily completed and whether PRASA has made a good faith, timely effort to implement the SEP shall be in the discretion of EPA, subject to Section XXII (Dispute Resolution) of this Consent Decree.

96.  PRASA shall pay any stipulated penalties that accrue under this Section within thirty (30) days of receipt of written demand by EPA for such penalties.  PRASA shall pay such

penalties by certified or cashier's check, made payable to "Treasurer, United States of America," and tender payment to the U.S. Attorney's Office, in the District of Puerto Rico, to the address specified in Section XIX (Notices) of this Consent Decree. PRASA shall also send a copy of the transmittal letter and the check payable to the addresses specified in that Section. Interest and late charges shall be paid in accordance with the applicable provisions of Section XIII (Stipulated Penalties) of this Consent Decree.

97. Any public statement, oral or written, in print, film, or other media, made by PRASA making reference to any SEP implemented pursuant to this Section shall prominently include the following language in both English and Spanish:

> "This project was undertaken in connection with the settlement of an enforcement action taken by the United States Environmental Protection Agency for violation of the Federal Clean Water Act."

98. If any event occurs which causes or may cause delays in the completion of any portion of the SEP as required under this Consent Decree, the provisions of Section XVIII (Force Majeure) of this Consent Decree shall be controlling.

## XXIV. COMPLIANCE WITH APPLICABLE LAWS

99. This Consent Decree in no way relieves PRASA of its responsibility to comply with all applicable federal, Commonwealth and local laws, regulations, and permits, and compliance with this Consent Decree shall not constitute a defense to any action pursuant to said laws, regulations, or permits, except as otherwise provided in this Consent Decree or in the Clean Water Act. PRASA shall be responsible for obtaining all Commonwealth or local permits which are necessary for the performance of any obligations imposed in this Consent Decree.

This Consent Decree shall not be construed as a determination of any issue related to any federal, Commonwealth, or local permit, nor shall it be construed to be an NPDES Permit or a modification of any NPDES Permit or other permit.

100.    Nothing in this Consent Decree relieves PRASA from any requirements imposed on it relating to the Clean Water Act, laws of the Commonwealth of Puerto Rico, or any orders or Permits issued pursuant to the foregoing, with the exception of the Prior Consent Decree and the Prior Administrative Enforcement Actions and except as otherwise provided in this Consent Decree or in the Clean Water Act.

101.    In the Quarterly Meetings, the Parties agree to discuss significant changes in law and/or regulations and whether such changes may require modification of this Consent Decree pursuant to Section XXIX.

## XXV. EFFECT OF SETTLEMENT

102.    Effective upon the date of entry of this Consent Decree, and in consideration of the civil penalty that will be made, and the injunctive relief and SEP(s) that will be performed by PRASA under this Consent Decree, except as expressly set forth in Section XXVI (Reservation of Rights), the United States covenants not to bring any administrative or judicial action for violations of Sections 301 and 402 of the CWA as alleged in the Complaint filed in this matter. Entry of this Consent Decree by the Court shall resolve the United States' civil claims, except as expressly set forth in Section XXVI below, for violations of the above-referenced statutory provisions as alleged in the Complaint up to and including the date of lodging of the Consent Decree.

103. This Consent Decree supercedes the Prior Consent Decree, as defined in this Consent Decree, entered into between the United States and PRASA. This Consent Decree also supercedes the Prior Administrative Enforcement Actions, as defined in this Consent Decree and as listed in Appendix J.

104. This Consent Decree shall not be construed to prevent or limit the rights of the United States to obtain penalties or injunctive relief under the CWA, regulations promulgated thereunder, or Permit conditions, except as expressly specified herein.

## XXVI. RESERVATION OF RIGHTS

105. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, all rights against PRASA with respect to all matters other than those alleged in its Complaint, including but not limited to the following:

a. Claims based on a failure by PRASA to meet a requirement of this Consent Decree;

b. Claims for civil and stipulated penalties, if any, under the terms of this Consent Decree;

c. Any criminal liability;

d. Claims based on discharges or SSOs from any PRASA Facility, whether or not covered by the terms of this Consent Decree, which may pose an imminent and substantial endangerment to health or to the environment in accordance with Section 504 of the CWA, 33 U.S.C. § 1364; and

e.     With respect to CWA violations that PRASA is required by statute, regulation or permit to report to EPA, claims based on PRASA's failure to report such violations that otherwise would have been included within the scope of the allegations in the Complaint.

f.     Actions to enforce any previous Orders of the Court, any Consent Decree between the United States and PRASA, and any administrative order issued by EPA to PRASA not expressly superceded by this Consent Decree.

106.    Except as provided in Section XXV (Effect of Settlement), the entry of this Consent Decree shall not limit or otherwise preclude the United States from taking additional criminal or civil enforcement action with regard to PRASA's Facilities, including all appurtenances thereto, pursuant to any federal or Commonwealth law, regulation or Permitting condition. EPA reserves the right to order or to require PRASA to take such other corrective action or response measures as EPA deems necessary to protect human health or the environment. Except as otherwise specified in this Consent Decree, PRASA reserves its right to raise any defense available to it to any such criminal, civil, or other corrective action instituted by the United States or any other party.

107.    This Consent Decree does not limit or affect the rights of PRASA, the Commonwealth, or the United States against any third parties not named herein, nor the rights of third parties not Parties to this Consent Decree against any other parties, except as otherwise provided in this Consent Decree. This Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Decree. The Parties recognize that this Consent Decree resolves only certain matters between PRASA and the United States and that its execution does not preclude PRASA from asserting any legal or factual position in any action brought against them by any person or entity not a Party to this Consent Decree. Entry of this

Consent Decree as a final judgment shall not be considered binding on PRASA in litigation with third parties.

108.    The execution of this Consent Decree in no way affects the pre-exiting rights and obligations, if any, between PRASA and any prior operator of its Facilities.

## XXVII. COSTS OF SUIT

109.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States may be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XXVIII PUBLIC COMMENT

110.    Final approval of this Consent Decree by the United States is subject to the public notice and comment requirements of 28 C.F.R. § 50.7. The United States may withdraw or withhold its consent if the public comments establish that entry of this Consent Decree would be inappropriate, improper, inadequate or otherwise not in the public interest. After reviewing the public comments, if any, the United States shall advise PRASA by motion whether it seeks entry of this Consent Decree. PRASA agrees to the entry of this Consent Decree, as presented to the Court for lodging, without further notice.

## XXIX. MODIFICATION

111.    No material modification shall be made to this Consent Decree without written agreement of all Parties who remain subject to the Consent Decree and written approval of the Court, except as otherwise provided under this Consent Decree. Any material modification to this Consent Decree shall be incorporated into this Consent Decree and shall be enforceable by

the Court. Any non-material modifications agreed to by the Parties shall be deemed incorporated into this Consent Decree and shall be enforceable by the Court. Nothing in this Paragraph shall be deemed to alter the Court's power to supervise this Consent Decree. PRASA may apply for a modification or extension of a deadline even though the basis for such modification does not satisfy the grounds for a force majuere event pursuant to Section XVIII (Force Majeure).

## XXX. RETENTION OF JURISDICTION

112.    The Court shall retain jurisdiction of this matter for all purposes, including overseeing implementation of this Consent Decree, until termination of the Consent Decree.

113.    The United States retains the right to enforce the terms of this Consent Decree and to take any other action authorized by federal, Commonwealth or local law to achieve or maintain compliance with this Consent Decree.

## XXXI. EFFECTIVENESS AND TERMINATION

114.    Unless otherwise provided herein, this Consent Decree shall be effective upon the date of its entry by the Court.

115.    Except for the records retention provision of this Consent Decree, this Consent Decree shall be terminated when the following conditions have been met:

a.    All civil penalties and stipulated penalties, if assessed, pursuant to any provision of this Consent Decree have been paid.

b.    All SEPs have been satisfactorily completed in accordance with the provision of Section XXIII (Supplemental Environmental Project).

c.      PRASA certifies to EPA that all short term and mid term remedial actions and long term capital improvements required to be developed and implemented pursuant to Section V (Remedial Actions at Wastewater Treatment Plants) at all applicable Plants have been completed, such certification to be subject to EPA verification.

d.      Ninety-five (95) percent of all Facilities identified in Appendix A have operated for six consecutive months without stipulated penalties pursuant to Paragraph 42.b and 42.c.

e.      An EPA-approved IPMP, SRCP, and SSSEP/SSSRP has been in effect at all applicable Facilities for at least two years.

116.   EPA may, or the Parties may jointly, move to terminate the Consent Decree at any time. If all of the remedial actions and capital improvement projects referred to in Appendices B through D have been completed, PRASA may move the Court to terminate the Consent Decree. Regardless of whether the remedial actions and capital improvement projects referred to in Appendices B through D have been completed, the United States reserves its right to object to termination if any Facility is not complying with its NPDES Permit.

117.   Nothing herein shall relieve PRASA or any subsequent operator of PRASA's facilities from the obligation to provide proper operation and maintenance at all facilities as required by the Clean Water Act and regulations promulgated thereunder, and the terms and conditions of PRASA's NPDES Permits after termination of this Consent Decree.

118.   The Parties may at any time after the conditions in this Section have been met jointly move to terminate this Consent Decree based on their representation that all of its requirements have been satisfied. PRASA may unilaterally move to terminate this Consent

Decree if (I) it has a good faith basis to believe that the conditions of this Section have been met; and (ii) it has unsuccessfully sought EPA's concurrence that the conditions of this Section have been met. PRASA's motion to terminate this Consent Decree shall only be granted if PRASA can demonstrate on the administrative record that EPA's failure to concur that the conditions of this Section have been met is arbitrary and capricious or otherwise not in accordance with law.

119.    Nothing herein shall be construed to limit the authority of the United States to undertake any action against any person, including PRASA, to abate or correct conditions which may present an imminent and substantial endangerment to the public health, welfare, or the environment, or for any other violation of law or regulation.

So ORDERED this 10th day of January, 2007.

_____
Hon.
United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Puerto Rico Aqueduct and Sewer Authority, et al.*, Civil No.

FOR THE PLAINTIFF UNITED STATES OF AMERICA:

Dated:_____

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resource Division
U.S. Department of Justice

Dated:_____

PATRICIA A. MCKENNA
Senior Attorney   Senior
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D St., N.W.
Washington, D.C. 20004

ROSA EMILIA RODRIGUEZ-VELEZ
United States Attorney
District of Puerto Rico

Dated: June ___ 2006

ISABEL MUÑOZ ACOSTA
Assistant United States Attorney
USDC-PR 128302
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, Puerto Rico 00918
(787) 766-5656

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Puerto Rico Aqueduct and Sewer Authority, et al.,* Civil No.


Dated:_____

GRANTA Y. NAKAYAMA
Assistant Administrator for
 Enforcement
United States Environmental
 Protection Agency
Ariel Rios Bldg.
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460


Dated: *May 15, 2006*

Alan J. Steinberg
Regional Administrator
EPA Region II
290 Broadway
New York, New York

- 68 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Puerto Rico Aqueduct and Sewer Authority, et al., Civil No.

FOR THE DEFENDANT PUERTO RICO AQUEDUCT AND SEWER AUTHORITY:

Dated: 4/28/06

JORGE RODRIGUEZ RUIZ
Executive President
Puerto Rico Aqueduct & Sewer Authority
P.O. Box 7066
San Juan, Puerto Rico 00916

Dated: 4/28/06

VERONICA CANDELAS PÉREZ
General Counsel
ISABEL PENA
Assistant General Counsel
Office of General Counsel
Puerto Rico Aqueduct & Sewer Authority
P.O. Box 7066
San Juan, Puerto Rico 00916

Dated: 4/28/06

RAFAEL LAMA
Compliance and Quality Control Executive
Director
Puerto Rico Aqueduct & Sewer Authority
P.O. Box 7066
San Juan, Puerto Rico 00916

Dated: 4/28/06

ENG. JOSÉ F. ORTIZ VÁZQUES
Infrastructure Director
Puerto Rico Aqueduct & Sewer Authority
P.O. Box 7066
San Juan, Puerto Rico 00916

Dated: 4/28/06

ENG. GERARDO GONZÁLEZ
Executive Regional Director, Metro Region
Puerto Rico Aqueduct & Sewer Authority
P.O. Box 7157
San Juan, Puerto Rico 00922

Dated: 4/28/06

ISRAEL HILERIO GAGO
Executive Regional Director, North Region
Puerto Rico Aqueduct & Sewer Authority
P.O. Box 475
Arecibo, Puerto Rico 00612

Dated: 4/28/06

ANTONIO MATÍAS ROSARIO
Executive Regional Director, West Region
Puerto Rico Aqueduct & Sewer Authority
P.O. Box 3290
Mayaguez, Puerto Rico 00681

Dated: 4/28/06

JUAN F. SANTOS CEDEÑO
Executive Director, South Region
Puerto Rico Aqueduct & Sewer Authority
Apartado 7697
Ponce, Puerto Rico 00732

Dated: 4/28/06

EUFEMIO TOUCET GARCÍA
Executive Director, East Region
Puerto Rico Aqueduct & Sewer Authority
P.O. Box 5729
Caguas, Puerto Rico 00726

- 70 -

Dated: 4/28/06

_E. Donald Elliott_

E. DONALD ELLIOTT
ALEXANDER SCHMANDT
CARRIE F. JENKS
Willkie Farr & Gallagher LLP
1875 K Street, NW
Washington, DC 20006