UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CIVIL NO: 06-1624 (JAF) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PUERTO RICO AQUEDUCT AND ) | |
| SEWER AUTHORITY ) | |
| ) | |
| and ) | |
| ) | |
| THE COMMONWEALTH OF ) | |
| PUERTO RICO ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**PERMANENT INJUNCTION ORDER**

Before the court is Defendant Puerto Rico Aqueduct and Sewer Authority's ("PRASA") Motion for injunctive relief (Docket No. 30), which incorporates its memorandum of law in support thereof, wherein PRASA requests temporary and permanent injunctive relief against Leovigildo "Leo" Cotté-Torres (hereinafter "Cotté"), in his personal and official capacity as Mayor of the Municipality of Lajas, Puerto Rico, as well as any and all persons acting on his behalf or under his direction, and any and all persons undertaking the actions more fully described in the motion. Cotté has responded. (Docket No. 41.) A hearing for preliminary injunction was held July 13, 2009, and only PRASA and the Environmental Protection Agency presented evidence. On July 13, 2009, the Court entered a Preliminary Injunction Order (Docket No. 42); among other things, the Court ordered the parties to show cause **on or before August 13, 2009** as to why the preliminary injunction should not become permanent. On July 14, 2009, Cotté filed a Motion for Reconsideration (Docket No. 45), which was denied by the Court on

August 11, 2009 (Docket No. 45). On August 13, 2009, a group of non-parties filed a request for intervention (Docket No. 50), which was denied as untimely by the Court on August 25, 2009 (Docket No. 54), and stricken from the record as requested by PRASA in its opposition to Docket No. 50 (see Docket No. 53). On September 9, 2009, the same group of non-parties requested reconsideration of Docket No. 54 (see Docket No. 55), which was opposed by PRASA on September 18, 2009 (Docket No. 56), and denied by the Court on October 14, 2009 (Docket No. 57). Finally, on October 14, 2009, the Court deferred ruling on PRASA's request for a permanent injunction, and granted opposing parties until October 26, 2009, to express any legal reason why the Court should not grant permanent injunctive relief as requested by PRASA (Docket No. 58). Opposing parties have not expressed any legal reason why the Court should not grant permanent injunctive relief as requested by PRASA, and the Court thereby **GRANTS** the permanent injunctive relief requested by PRASA.

PRASA's motion seeks immediate injunctive relief in the form of an Order from the court prohibiting Cotté, any and all persons acting on his behalf or under his direction, and any and all persons undertaking the actions more fully described in the Motion, to preserve the status quo, to ensure that PRASA may continue to undertake a series of improvements to the Lajas Wastewater Treatment Plant (the "Lajas WWTP") to achieve phosphorus removal and increase its treatment capacity, and the elimination of the La Parguera Wastewater Treatment Plant (the "La Parguera WWTP") by connection to the Lajas WWTP, specifically by means of the installation of an 8-inch line and an intermediate relay lift station to connect the La Parguera WWTP to the Lajas WWTP. The referenced relay lift station is being constructed along road PR-303 in the Municipality of Lajas. The elimination of the La Parguera WWTP is to be achieved by the diversion of flow to the Lajas WWTP by construction of a gravity sewer line, a

force trunk sewer line and two lift stations (the "Project").

The Project is being undertaken by PRASA as a result of the Consent Decree (Docket No. 16) entered in the instant case, as well as the Judgment entered in criminal case number 06-202 (PG) (the "Criminal Judgment").

It appears from the evidence received on July 13, 2009, and the previous Declaration of Joel Lugo Rosa Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746, as well as the Declaration of Angel Feliberty Silvestry Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746, that Cotté, as well as other persons acting on his behalf or under his direction or out of their own volition, have attempted to impede PRASA's compliance with the Consent Decree and the conditions of the Criminal Judgment. The allegation is to the effect that Cotté's interference with PRASA's obligations included mobilizing the Lajas Municipal Police to impede PRASA's prosecution thereof. These allegations against the mayor were not seriously contested at the July 13, 2009, hearing, but we find that members of the community were mainly involved in obstructing PRASA's construction process. It appears possible that these individuals relied on different objections by the mayor, mainly on the piping route, which are not pertinent here now.

The powers established under the All Writs Act support this court's authority to protect EPA-negotiated consent decrees. *See Sable v. General Motors Corp.*, 90 F.3d 171 (6th Cir. 1996). In *Egri v. Connecticut Yankee Atomic Power Co.*, 270 F.Supp.2d 285 (D.Conn. 2002), it was decided that the All Writs Act conferred jurisdiction upon the federal court to remove from state court a suit by landowners seeking to halt approval by the town of a nuclear power plant's proposal to construct a dry nuclear waste storage unit on premises, when the federal court had authorized construction as part of a settlement of a suit brought by the town. In addition, this court has jurisdiction pursuant to the All Writs Act to craft a permanent injunction to compel

residents of the town, as non-parties to the underlying suit, from acts that will frustrate the consent decree's operation on PRASA; the court does not purport to bind non-parties to particular provisions of the decree itself, except insofar as essential to the implementation of the consent decree.  *See In re Egri*, 68 Fed.Appx. 249 (2nd Cir. 2003), 2003 WL 21510422, *cert. denied*, 124 S.Ct. 1419 (2003).

Under the All Writs Act, the court's power to effectuate an injunction extends to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, as in the instant case.  *See Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 244 F.Supp.2d 41 (N.D.N.Y. 2003), *aff'd in part and remanded*, 451 F.3d 77 (2nd Cir. 2006), *cert. denied*, 127 S.Ct. 1373.

In limited and extraordinary circumstances, the court may enjoin individuals who are not parties to the action where they have notice of court's orders, they intentionally violate those orders, they are members of a class who cannot realistically be specified in advance of such violations, and their actions interfere with obligations and the ability of parties to comply with the court's orders, create conditions of lawlessness and chaos in the community, and interfere with the court's ability to adjudicate rights and responsibilities of parties before it.  *See U.S. v. State of Wash.*, 459 F.Supp. 1020 (W.D.Wash. 1978), *aff'd*, 645 F.2d 749 (9th Cir.1981).  Cotté, as well as the general population of the Commonwealth of Puerto Rico, have notice of the Consent Decree and the Criminal Judgment; in fact, the Criminal Judgment ordered PRASA to publicize an announcement on three major newspapers in Puerto Rico containing the nature of the offense committed, the fact of the conviction, the nature of the punishment imposed, and the steps that will be taken to prevent the recurrence of similar offenses (Crim. No. 06-202 (PG),

Docket No. 22, at p. 3, ¶ 2). Therefore, Cotté and anyone else seeking to thwart PRASA's compliance with the Consent Decree have actual and constructive knowledge of the Consent Decree and the Criminal Judgment, inasmuch as the Criminal Judgment also incorporates by reference the Consent Decree, and the court has knowledge that PRASA publicized the conviction in accordance with the Criminal Judgment.

Permanent injunctive relief is a remedy that should be granted if the movant proves the following elements: (1) the likelihood of success on the merits; (2) the potential for irreparable harm to the movant; (3) the balance of the movant's hardship if relief is denied versus the nonmovant's hardship if relief is granted; and (4) the effect of the decision on the public interest. *See Ross-Simons of Wardwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir. 1996); *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 5 (1st Cir. 1991). Likelihood of success is the touchstone of the permanent injunction inquiry. *See Ross-Simons*, 102 F.3d at 16; *Weaver v. Henderson*, 984 F.2d 11, 12 1st Cir. 1993). PRASA's request fully complies with the required criteria as set forth *infra*.

It being determined by the court that PRASA is not only entitled, but also obligated under the Consent Decree and the Criminal Judgment to prosecute the Project; that Cotté's and the community's actions have the potential for irreparable harm to PRASA; that the harm to PRASA outweighs any harm to Cotté and the community; and that the Project is of extreme public interest not only to the people of Lajas but also to the People of Puerto Rico, the court, therefore, **GRANTS** PRASA's request, and it is **HEREBY ORDERED**:

1. Cotté and any other person or entity are permanently enjoined from taking any action which would thwart PRASA's compliance with the Consent Decree and the Criminal Judgment.

Permanent Injunction Order
Civil No. 06-1624 (JAF)
Page 6

    2.    Cotté and any other person or entity shall permanently cease and desist from any and all actions designed to impede prosecution of the Project and thereby thwart PRASA's compliance with the Consent Decree and the Criminal Judgment.

    3.    It appearing from the record that PRASA has fully complied with the permitting process for the construction of the Project, and that the time to challenge the permits obtained by PRASA has passed without the permits being challenged, the Court permanently enjoins Cotté and any other person or entity from challenging the validity of the permits obtained by PRASA.

    4.    The individual persons above stated are FOREWARNED that they may be subject to civil contempt, and/or economic sanctions for any violation to this Order.

    5.    The preliminary injunction entered by this Court on July 13, 2009, is hereby declared permanent.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 23rd day of March, 2010.

                                                          s/José Antonio Fusté
                                                          JOSE ANTONIO FUSTE
                                                          Chief U. S. District Judge